EARL L. CREECH v. J. F. ALEXANDER, COMMISSIONER OF MOTOR VEHICLES FOR THE STATE OF NORTH CAROLINA

No. 7627SC611

(Filed 5 January 1977)

1. Automobiles § 1— drunken driving — refusal to take breathalyzer test — sentence in criminal case — effect on license revocation

Petitioner's guilty plea to a charge of driving under the influence and limitation of his driving privileges did not exempt him from the

mandatory requirement of G.S. 20-16.2 that his driver's license be revoked for refusal to submit to a breathalyzer test at the time of his arrest for driving under the influence.

**2. Automobiles § 2— drunken driving — refusal to take breathalyzer test without just cause or excuse — finding proper**

The trial court properly found that defendant had "without just cause or excuse, voluntarily, understandingly and intentionally" refused to submit to a breathalyzer test where the evidence showed that defendant was advised of his rights, including the fact that he could contact his attorney but that the test would not be delayed for over 30 minutes; defendant unsuccessfully attempted to phone his attorney and then contacted his wife and told her to have his attorney to meet him; approximately 20 minutes after defendant was informed of his rights the breathalyzer operator offered to administer the test, but defendant refused, stating that he wanted to have his attorney present; and the remainder of the 30-minute time limit passed without defendant having been informed of its expiration or having taken the test.

APPEAL by petitioner from *Friday, Judge.* Judgment entered 17 February 1976 in Superior Court, GASTON County. Heard in the Court of Appeals 9 December 1976.

On 6 June 1975, Earl L. Creech (hereinafter called "petitioner") filed a petition in Gaston County Superior Court against the North Carolina Commissioner of Motor Vehicles (hereinafter called "respondent"). The petition was made pursuant to G.S. 20-25 and requested the court to review the action of respondent in suspending petitioner's driving privileges for failure to take a chemical breath test as provided in G.S. 20-16.2. A hearing on the petition was held 11 February 1976, but petitioner presented no evidence. Respondent's evidence tended to show that on 3 March 1975, petitioner was arrested for public drunkenness. At the time of petitioner's apprehension, the arresting officer smelled a strong odor of alcohol on petitioner's breath. He also noticed that petitioner was imbalanced and needed guidance to walk and that his speech was "thick-tongued and mumbled." Petitioner was taken to the Intake Center at the Charlotte/Meckenburg Jail and subsequently charged with driving under the influence of intoxicating beverage.

Petitioner was taken before a duly licensed breathalyzer operator. At approximately 6:40 p.m., he advised petitioner of his rights regarding the taking of a breathalyzer test. He specifically informed petitioner " . . . that he had the right to call an Attorney and select a witness to review for him the testing

procedures but the test would not be delayed for this purpose for a period of in excess of thirty minutes from the time he was notified of his rights." Petitioner was then given a written copy of the rights which had been read to him. He attempted to phone his attorney but was unable to complete the call, so he contacted his wife and requested that she tell the attorney to meet him. Approximately 20 minutes after petitioner was informed of his rights, the breathalyzer operator offered to administer the test, but petitioner indicated that he wanted to have his attorney present. Thereafter, petitioner was not informed as to the expiration of the 30-minute limit for the test. At 7:45 p.m. the arresting officer noted on the alcohol influence report that petitioner had refused to take the breathalyzer test " . . . because he was unable to contact his lawyer in time."

Petitioner subsequently pleaded guilty to the charge of driving under the influence and was given a limited driving privilege. After a hearing before the Deputy Hearing Commissioner of the Department of Motor Vehicles, respondent revoked petitioner's driving privileges pursuant to G.S. 20-16.2 for refusal to submit to the breathalyzer test.

At the close of respondent's evidence, petitioner moved to rescind respondent's revocation of his license, and the motion was denied. On 17 February 1976, Friday, Judge, filed a judgment that found that petitioner had been arrested upon reasonable grounds for driving under the influence of intoxicating beverages and that

> " . . . a person authorized to administer a chemical test informed the petitioner verbally and in writing furnishing a signed document setting out all of the petitioner's rights under the provisions of G.S. 20-16.2(a), but the petitioner, without just cause or excuse, voluntarily, understandingly and intentionally refused to submit to such test."

The court then concluded that " . . . petitioner willfully refused to take the chemical test of breath in violation of law, and the order of the respondent complained of is justified in fact and in law. . . . " and affirmed respondent's order of revocation.

*Attorney General Edmisten, by Deputy Attorney General Jean A. Benoy, for respondent appellee.*

*Dolley & Katzenstein, by Charles J. Katzenstein, Jr., for petitioner appellant.*

MORRIS, Judge.

[1] In his first assignment of error, petitioner contends that the trial court erred in denying his motion to rescind respondent's revocation order. He argues that the purpose of G.S. 20-16.2, which provides for mandatory revocation of driving privileges upon refusal to submit to chemical testing of blood or breath, is to produce evidence to assist the State in convicting motorists charged with driving under the influence in violation of G.S. 20-138. Petitioner maintains that this purpose was fully accomplished when he pleaded guilty to driving under the influence and that no further purpose could be served by suspension of his driving privileges for his refusal to take the test. Thus, according to petitioner, his plea of guilty effectively "cured the defect" of his earlier refusal to take the breathalyzer test. We disagree.

This question was effectively resolved in *Joyner v. Garrett, Comr. of Motor Vehicles,* 279 N.C. 226, 182 S.E. 2d 553, *petition for reh. den.,* 279 N.C. 397, 183 S.E. 2d 241 (1971). The petitioner in that case pleaded guilty to driving under the influence after refusing to take the chemical breath test. He was sentenced to a 12-month suspension of his license on the charge. Thereafter, his license was suspended for 60 days for his refusal to take the test, and he contended that his sentence on the guilty plea constituted the "full penalty" which the State could extract. Sharp, J. (now C.J.), disagreed, stating:

> "The suspension of a license for refusal to submit to a chemical test at the time of arrest for drunken driving and a suspension which results in a plea of guilty or a conviction of that charge are separate and distinct revocations . . . . Petitioner's guilty plea in no way exempted him for the mandatory effects of the sixty-day suspension of his license if he had wilfully refused to take a chemical test. . . .

> Under implied consent statutes such as G.S. § 20-16.2, the general rule is that neither an acquittal of a criminal charge of operating a motor vehicle while under the influence of intoxicating liquor, nor a plea of guilty, nor a conviction has any bearing upon a proceeding before the licensing agency for the revocation of a driver's license for a refusal to submit to a chemical test. 60 C.J.S., *Motor Vehicles,* § 164.16 (1969) . . . . " 279 N.C. at 238, 182 S.E. 2d at 561-62.

---

**Creech v. Alexander, Comr. of Motor Vehicles.**

---

See also *Vuncannon v. Garrett, Comr. of Motor Vehicles,* 17 N.C. App. 440, 194 S.E. 2d 364 (1973). Accordingly, the trial court did not err in denying petitioner's motion. This assignment is overruled.

**[2]**   In his second assignment of error, petitioner contends that the trial court erred in finding that he " . . . without just cause or excuse, voluntarily, understandingly and intentionally refused to submit . . . " to the breathalyzer test. Again, we disagree.

When a case is tried before a judge sitting without a jury, the findings of the court are as conclusive on appeal as a jury verdict if they are supported by any competent evidence. *Coggins v. City of Asheville,* 278 N.C. 428, 180 S.E. 2d 149 (1971). This is true even though the evidence might sustain findings to the contrary. *Blackwell v. Butts,* 278 N.C. 615, 180 S.E. 2d 835 (1971). Here, the evidence shows that petitioner was arrested after a law enforcement officer noticed that petitioner staggered, had slurred speech and smelled of alcoholic beverages. Petitioner was informed of his rights, both orally and in writing, including the fact that he could contact his attorney but that the test would not be delayed for over 30 minutes. After 20 minutes had passed, petitioner was again asked to take the test but refused stating that he wanted to wait for his attorney. The remaining time passed without petitioner's taking the test. Once the breathalyzer operator fully informed petitioner of his rights with regard to the breath test, there certainly was no obligation upon him to remind petitioner of the effect of his refusal to submit to the test. Petitioner's delay in taking the test, after being advised of the effect of his refusal, was at his own peril. Therefore, the trial court could properly find, as it did, that defendant had " . . . without just cause or excuse, voluntarily, understandingly and intentionally refused to submit . . . " to the breathalyzer test.

Affirmed.

Chief Judge BROCK and Judge BRITT concur.