DONALD A. SEDERS v. EDWARD L. POWELL, COMMISSIONER OF MOTOR VEHICLES

No. 20

(Filed 6 November 1979)

1. **Automobiles § 126.3— breathalyzer test—right to consult attorney—applicability of 30 minute time. limit**

　　G.S. 15A-501(5), which gives a criminal defendant a right to consult with an attorney within a reasonable time after arrest, does not apply to breathalyzer tests, and the 30 minute time limit referred to in G.S. 20-16.2(a)(4) applies both to the purpose of calling an attorney and the purpose of selecting a witness to view the breathalyzer testing procedure. The contrary opinion of *Price v. Dept. of Motor Vehicles*, 36 N.C. App. 698 (1978) is overruled.

2. **Automobiles § 126.3— willful refusal to take breathalyzer test—elapse of time while awaiting attorney's call**

　　The trial court properly found that plaintiff "willfully refused" to submit to a breathalyzer test where there was evidence tending to show that plaintiff was advised that the test could not be delayed for more than 30 minutes and that if plaintiff did not take the test it would be noted as a refusal; plaintiff refused to take the test until he talked with his attorney; the breathalyzer operator on three occasions warned plaintiff that his time was running out and told plaintiff how many minutes he had left; and the 30 minute time limit expired while plaintiff was waiting for an attorney to return his call.

**3. Automobiles § 126.3— breathalyzer test—no right to consult attorney**

The operator of a motor vehicle in North Carolina has no constitutional right to confer with counsel prior to making a decision on whether to submit to a breathalyzer test since (1) proceedings involving the suspension or revocation of a license to operate a motor vehicle are civil, not criminal, in nature, and (2) anyone who accepts the privilege of driving upon the highways of this State has consented, pursuant to G.S. 20-16.2(a), to the use of the breathalyzer test and has no constitutional right to consult a lawyer to void that consent.

**4. Automobiles § 126.3— breathalyzer test—30 minute time limit—constitutionality**

The strict 30 minute limitation of G.S. 20-16.2(a)(4) for taking a breathalyzer test is not irrational and violative of due process, since the State must balance its need to test the person arrested for driving under the influence before evidence of his condition metabolizes away with the arrestee's statutory right to consult counsel before undergoing the test.

Justice BROCK took no part in the consideration or decision of this case.

ON plaintiff's petition for discretionary review of decision of the Court of Appeals, 39 N.C. App. 491, 250 S.E. 2d 690 (1979), affirming judgment entered 26 September 1977 by *Lupton, Judge* in the Superior Court, GUILFORD County.

This civil action was initiated by plaintiff on 25 February 1976 pursuant to G.S. 20-16.2(e) and G.S. 20-25. Plaintiff sought review of the revocation of his driving privileges by the defendant for plaintiff's alleged refusal to submit to the breathalyzer test as required by G.S. 20-16.2(a). Defendant had notified plaintiff on 17 February 1976 that his driving privileges would be revoked for a period of six months beginning 27 February 1976. When plaintiff initiated this action on 25 February 1976, the superior court entered an order staying the revocation of the driving privileges pending the outcome of his case. The matter came on for hearing at the 26 September 1977 Civil Session of Guilford County Superior Court.

On Sunday, 7 September 1975, Trooper Philip R. Wadsworth came upon the plaintiff's vehicle at about 3:00 p.m. Plaintiff was driving the car alone. Trooper Wadsworth approached the car, smelled the strong odor of alcohol and found the plaintiff's speech to be "fair" and the plaintiff "talkative." Plaintiff was placed under arrest for driving under the influence. It took approximately 15 to 20 minutes to take plaintiff to the breathalyzer room where Trooper R. D. Jacobs was on duty. Once there, Trooper

Wadsworth requested that the plaintiff take the breathalyzer test and Trooper Jacobs read plaintiff's rights as set out in G.S. 20-16.2(a). The rights read were:

1. You have a right to refuse to take the test.

2. Refusal to take the test will result in revocation of your driving privilege for six months.

3. You may have a physician, qualified technician, chemist, registered nurse, or other qualified person of your own choosing administer a chemical test or tests in addition to any administered at the direction of the law enforcement officer.

4. You have the right to call an attorney and select a witness to view for you the testing procedures, but the test shall not be delayed for this purpose for a period in excess of thirty minutes from the time you are notified of your rights.

Trooper Jacobs completed reading these rights at 3:30 p.m. and gave plaintiff a copy. Plaintiff advised the trooper that he would like to call a lawyer and he was given a telephone and telephone book. He attempted several calls unsuccessfully. While he was trying to call, Trooper Jacobs warned plaintiff several times that time was running out and told him how many minutes he had remaining. Jacobs also warned defendant that the test could not be delayed for more than 30 minutes or it would be written up as a refusal. Plaintiff replied that he was not going to do anything until he had a chance to talk to his lawyer. Trooper Jacobs testified, "I requested Mr. Seders to take the breath test, and in fact requested him three times but Mr. Seders refused to take the test and said he was not going to take the test until he had talked with his lawyer."

At 4:01 p.m., Trooper Jacobs "wrote Mr. Seders up" as having refused the breathalyzer test and the machine was dismantled. Approximately 10 minutes later at 4:11 p.m., plaintiff received a telephone call in the breathalyzer room and thereafter advised Trooper Jacobs that he would take the test. Trooper Jacobs advised plaintiff that it was too late and that he "had already written him up as having refused."

Plaintiff's explanation was that he had had a few drinks while watching a football game at a friend's house. He was on the way home when his car slid on the road and Trooper Wadsworth came up and arrested him for driving under the influence. At the police station he tried to call several lawyers but was unable to reach any of them. He finally reached a lawyer's wife and she stated that she would have her husband call him "right away." The lawyer called in several minutes and told him to go ahead and take the breathalyzer. Plaintiff told this to Trooper Wadsworth but was advised that it was too late. He did not notice Trooper Jacobs dismantling the machine and does not recall Trooper Jacobs telling him while he was trying to reach a lawyer that the test could not be delayed for more than 30 minutes. He was not aware of how much time was passing when he was trying to call the lawyer. He had previously been convicted of driving under the influence and he had taken the breathalyzer on that occasion. However, his lawyer in that case told him he should never have taken the test and this is why he wanted to call a lawyer before taking the breathalyzer on this occasion.

The superior court entered findings of fact, concluded that the plaintiff willfully refused to take the chemical test of breath in violation of law and upheld the order of the Division of Motor Vehicles revoking plaintiff's license. Plaintiff served notice of appeal to the Court of Appeals. The superior court continued in effect the restraining order previously entered which allowed defendant to retain his driving license. The matter was heard in the Court of Appeals and that court, on 16 January 1979, affirmed the judgment of the superior court. Plaintiff petitioned this Court for discretionary review pursuant to G.S. 7A-31 on 13 February 1979 and the motion was allowed on 5 April 1979. We allowed the petition primarily because the opinion of the Court of Appeals is in apparent conflict with another decision of that court in *Price v. N.C. Dept. of Motor Vehicles*, 36 N.C. App. 698, 245 S.E. 2d 518, *disc. rev. denied* 295 N.C. 551, 248 S.E. 2d 728 (1978).

*Smith, Patterson, Follin, Curtis, James & Harkavy by Charles A. Lloyd for plaintiff appellant.*

*Attorney General Rufus L. Edmisten by Assistant Attorney General William B. Ray and Deputy Attorney General William M. Melvin for defendant appellee.*

CARLTON, Justice.

We are presented by plaintiff with three arguments on this appeal: (1) That the lower courts misconstrued G.S. 20-16.2(a)(4) to impose an absolute 30 minute time limit in which one charged with driving under the influence has an opportunity to consult with a lawyer, (2) that the evidence in the instant case does not support the trial court's finding that plaintiff willfully refused to submit to the breathalyzer test, and (3) that there is a constitutional right to confer with counsel prior to taking the breathalyzer test and the 30 minute time limit is both irrational and a violation of due process. We reject the plaintiff's contentions and affirm.

## I. THE STATUTORY CLAIM

[1] Plaintiff first contends that the Court of Appeals incorrectly resolved the conflict between G.S. 20-16.2(a)(4) and G.S. 15A-501(5) and thereby created a conflict with a prior decision of another panel of the Court of Appeals in *Price v. N.C. Dept. of Motor Vehicles, supra.*

G.S. 20-16.2(a)(4) provides in pertinent part:

[The accused] has the right to call an attorney and select a witness to view for him the testing procedures; but that the test shall not be delayed *for this purpose* for a period in excess of 30 minutes from the time he is notified of his rights. (Emphasis added.)

G.S. 15A-501, however, provides in pertinent part:

Upon the arrest of a person, with or without a warrant, but not necessarily in the order hereinafter listed, a law enforcement officer:

. . . .

(5) Must without unnecessary delay advise the person arrested of his right to communicate with counsel and friends and must allow him *reasonable time* and reasonable opportunity to do so. (Emphasis added.)

In *Price*, the Court of Appeals held that the 30 minute time limitation mandated by G.S. 20-16.2(a)(4) refers only to the right to

"select a witness." It interpreted G.S. 15A-501(5), which gives a criminal defendant a right to consult with counsel within a reasonable time after arrest, as applying to breathalyzer tests. Thus, the right to contact an attorney before taking the test was not limited to 30 minutes but rather was limited to a "reasonable time." Only the right to select a witness was subject to the 30 minute ban.

The State argues here that the reasonable time language in *Price* is mere dictum. We disagree. Speaking through Judge Hedrick, the Court of Appeals in the instant case expressly disavowed the *Price* analysis. The two decisions are obviously in conflict.

In 1973 our legislature amended G.S. 20-16.2 in several respects and the phrase "for this purpose" was inserted in place of the phrase "for other purposes." 1973 N.C. Sess. Laws 181-82 (Chap. 206, s. 1). Echoing an argument advanced in *Price,* plaintiff here asserts that the phrase "for this purpose" is singular and that the change enacted by the General Assembly expressed its obvious intent to apply the 30 minute time limit only to defendant's right to secure a witness to view the testing procedure. On the basis of that construction, plaintiff argues, he would then have a "reasonable time" not limited to 30 minutes within which to call an attorney pursuant to G.S. 15A-501(5).

We cannot agree for several reasons. First, the 1973 amendment which inserted "for this purpose" in the place of "for these purposes" did so at the same time that it enumerated three other rights accruing to a driver faced with the prospect of a breathalyzer test. We believe the limiting words were inserted to apply to the single generic right enumerated in (a)(4), the right to have advice and support during the testing process, as opposed to the other rights enumerated in the preceding subsections, G.S. 20-16.2(a)(1) through (a)(3). This view is bolstered by the very wording of G.S. 20-16.2(a)(4):

That he has the right to call an attorney and select a witness to view for him the testing procedure; but that the test shall not be delayed for *this purpose* [*that is, the purpose of exercising the generic right embodied in this particular subsection*] for a period in excess of 30 minutes from the time he is notified of his *rights* [*that is, the other rights enumerated in*

*G.S. 20-16.2(a) which include the right to refuse, and the right to have an independent test done of alcohol content of the blood].* (Emphasis added.)

Furthermore, a grammarian's reading of the limiting phrase within its statutory context reveals that that to which plaintiff pins his hopes is not an ambiguity of phrasing but a proper grammatical expression of number. The singular noun phrase "this purpose" refers to the singular antecedent noun phrase "the *right* to call an attorney and select a witness. . . ." Grammatically and logically, then, the phrase "this purpose" refers to one right with two components—the right to call and to select. The 30 minute time limit applies to both components of that one right.

In resolving the potential conflict between these two statutes, we have, of course, employed the established rule that the legislative will is the controlling factor. *Ross Realty Co. v. First Citizens Bank & Trust Co.,* 296 N.C. 366, 250 S.E. 2d 271 (1979); *In re Banks,* 295 N.C. 236, 244 S.E. 2d 386 (1978); *State v. Hart,* 287 N.C. 76, 213 S.E. 2d 291 (1975). We do not think the legislature intended the breathalyzer statute to be either ungrammatical or illogical.

Furthermore, we do not think the legislature intended for the "reasonable time" contemplated by G.S. 15A-501(5), a part of the Criminal Procedure Act, to apply to the specialized situation contemplated by G.S. 20-16.2, a civil matter involving the administrative removal of driving privileges as a result of refusing to submit to a breathalyzer test. When two statutes apparently overlap, it is well established that the statute special and particular shall control over the statute general in nature, even if the general statute is more recent, unless it clearly appears that the legislature intended the general statute to control. *Colonial Pipeline Co. v. Neill,* 296 N.C. 503, 251 S.E. 2d 457 (1979); *National Food Stores v. N.C. Board of Alcoholic Control,* 268 N.C. 624, 151 S.E. 2d 582 (1966).

We finally note that it would be incongruous to hold that G.S. 20-16.2(a)(4) requires an accused to select a witness to view for him the testing procedure within 30 minutes but allows a greater period for the purpose of calling an attorney. Surely, in virtually every situation, it would be easier for an accused to contact an attorney by telephone within 30 minutes than to contact anyone

else and have them travel to the breathalyzer room to observe the test within that same time period. Our legislature has wisely recognized the genuine need for a time limit for both purposes and we hold that the 30 minute time limit referred to by G.S. 20-16.2(4) applies both to the purpose of calling an attorney and to the purpose of selecting a witness to view the testing procedure. Any language to the contrary in *Price v. Department of Motor Vehicles, supra,* is overruled. In the instant case, the superior court and the Court of Appeals properly construed G.S. 20-16.2(a)(4).

## II. THE TRIAL COURT'S FINDING

G.S. 20-16.2(c) provides as follows:

The arresting officer, in the presence of the person authorized to administer a chemical test, shall request that the person arrested submit to a test described in subsection (a). If the person arrested *willfully* refused to submit to the chemical test designated by the arresting officer, none shall be given. However, upon the receipt of a sworn report of the arresting officer and the person authorized to administer a chemical test that the person arrested, after being advised of his rights as set forth in subsection (a), *willfully* refused to submit to the test upon the request of the officer, the Division shall revoke the driving privilege of the person arrested for a period of six months. (Emphasis added.)

[2] In the instant case, the trial court concluded, after making detailed findings of fact, that the plaintiff "willfully refused" to submit to the breathalzyer and reaffirmed defendant's revocation order.

Plaintiff contends that the facts presented to the trial court were insufficient to support its conclusion that the refusal was willful. Crucially missing, he argues, is any evidence that plaintiff had knowledge that his time was running while he was waiting for his attorney to return his telephone call. We do not agree. The findings of the trial court are conclusive on appeal if there is evidence to support them. *Henderson County v. Osteen,* 297 N.C. 113, 254 S.E. 2d 160 (1979); *Williams v. Pilot Life Ins. Co.,* 288 N.C. 338, 218 S.E. 2d 368 (1975); *Gaston-Lincoln Transit, Inc. v. Maryland Casualty Co.,* 285 N.C. 541, 206 S.E. 2d 155 (1974). This

is true even though the evidence might sustain findings to the contrary. *Williams v. Pilot Life Ins. Co., supra, Blackwell v. Butts,* 278 N.C. 615, 180 S.E. 2d 835 (1971); *Knutton v. Cofield,* 273 N.C. 355, 359, 160 S.E. 2d 29, 33 (1968). Here, Trooper Wadsworth testified that he warned plaintiff on three occasions that his time was running out and told plaintiff how many minutes he had remaining. The trooper also stated that he told plaintiff that the test could not be delayed for more than 30 minutes and that if plaintiff did not take the test within that time it would be noted as a refusal. From this evidence, it is apparent that plaintiff was told the consequences of his failure to submit to the test within the 30 minute time limitation yet still elected to run the risk of awaiting his attorney's call. Plaintiff's action constituted a conscious choice purposefully made and his omission to comply with this requirement of our motor vehicle law amounts to a willful refusal. *See, e.g., Joyner v. Garrett,* 279 N.C. 226, 182 S.E. 2d 553, *reh. denied,* 279 N.C. 397, 183 S.E. 2d 241 (1971); *Creech v. Alexander,* 32 N.C. App. 139, 231 S.E. 2d 36, *cert. denied,* 293 N.C. 589, 239 S.E. 2d 263 (1977). We affirm the trial court's conclusion that plaintiff's refusal was willful.

## III. The Constitutional Claim

[3] Plaintiff next contends that he was denied his constitutional right to confer with counsel prior to deciding whether to submit to the breathalyzer. We join the majority of our sister states in holding that the operator of a motor vehicle in North Carolina has no constitutional right to confer with counsel prior to a decision to submit to the breathalyzer test. *See, e.g., State v. Sanchez,* 110 Ariz. 214, 516 P. 2d 1226 (1973); *Calvert v. Colorado Dept. of Revenue,* 184 Colo. 214, 519 P. 2d 341 (1974); *Swenumson v. Iowa Dept. of Public Safety,* 210 N.W. 2d 660 (Iowa 1973); *State v. Palmer,* 291 Minn. 302, 191 N.W. 2d 188 (1971); *Lewis v. Nebraska State Dept. of Motor Vehicles,* 191 Neb. 704, 217 N.W. 2d 177 (1974); *Harlan v. State,* 113 N.H. 194, 308 A. 2d 856 (1973); *Agnew v. Hjelle,* 216 N.W. 2d 291 (N.D. 1974); *Phares v. Dept. of Public Safety,* 507 P. 2d 1225 (Okla. 1973); *Deaner v. Commonwealth,* 210 Va. 285, 170 S.E. 2d 199 (1969); *Davis v. Pope,* 128 Ga. App. 791, 197 S.E. 2d 861 (1973); *Commonwealth v. Cannon,* 4 Pa. Commw. Ct. 119, 286 A. 2d 24 (1972).

We base our holding on two grounds. First, it is well established in this State that proceedings involving the suspention or revocation of a license to operate a motor vehicle are civil, not criminal in nature. *Joyner v. Garrett, supra; Honeycutt v. Scheidt*, 254 N.C. 607, 119 S.E. 2d 777 (1961); *Harrell v. Scheidt*, 243 N.C. 735, 92 S.E. 2d 182 (1956). Thus in *Joyner, supra*, this Court held that a year long suspension of the plaintiff's driver's license imposed by the court on a plea of guilty to an arrest for driving under the influence did not preclude the Department of Motor Vehicles from suspending the same plaintiff's driver's license when he refused to take a breathalyzer test at the time of his arrest. Speaking for the Court, Justice Sharp, later Chief Justice, reasoned that:

> 'the same motor vehicle operation may give rise to two separate and distinct proceedings. One is *a civil and administrative licensing procedure instituted by the Director of Motor Vehicles to determine whether a person's privilege to drive is revoked.* The other is a criminal action instituted in the appropriate court to determine whether a crime has been committed. Each action proceeds independently of the other and the outcome of one is of no consequence to the other.'

*Joyner v. Garrett, supra*, at 238, 182 S.E. 2d at 562, *quoting Ziemba v. Johns*, 183 Neb. 644, 646, 163 N.W. 2d 780, 781. (Emphasis added.) *See also Creech v. Alexander, supra; Vuncannon v. Garrett*, 17 N.C. App. 440, 194 S.E. 2d 364 (1973). Elsewhere we have reasoned that revocation proceedings are civil because they are not intended to punish the offending driver but to protect other members of the driving public. *Honeycutt v. Scheidt, supra* at 610, 119 S.E. 2d at 780. Thus, any constitutional claim plaintiff asserts to counsel is entirely inappropriate in this civil proceeding.

Second, anyone who accepts the privilege of driving upon our highways has already consented to the use of the breathalyzer test and has no constitutional right to consult a lawyer to void that consent. *See, e.g., Harlan v. State, supra; Deaner v. Commonwealth, supra.* G.S. 20-16.2(a) provides:

> Any person who drives or operates a motor vehicle upon any highway or any public vehicular area shall be deemed to have given consent, subject to the provisions of G.S. 20-139.1,

to a chemical test or tests of his breath or blood for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving or operating a motor vehicle while under the influence of intoxicating liquor.

In view of this prior consent, we see no reasons why plaintiff here has any claim to consult counsel other than that provided for in G.S. 20-16.2(a)(4).

Our decision today conforms with the United States Supreme Court's analysis in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed. 2d 908 (1966). There, the Court held, *inter alia*, that a driver arrested for drunk driving could not constitutionally object to a compulsory blood test done over his objections based on the advice of counsel. Stating that the objection had no basis in the fourth and fifth amendments, the Court held that he had no right to counsel in such a situation. Here, too, because of the civil nature of this proceeding, plaintiff has no claim to greater constitutional protections and thus no mandated constitutional right to counsel. *See also State v. Sykes*, 285 N.C. 202, 203 S.E. 2d 849 (1974), citing *Schmerber* and *State v. Randolph*, 273 N.C. 120, 159 S.E. 2d 324 (1968) (per curiam), holding that admission of results of breathalyzer tests administered to a motorist is not dependent upon whether warning as to right to counsel had been given and waived.

This assignment of error is overruled. We hold that there is no constitutional right to confer with counsel prior to making a decision as to whether to take the breathalzyer test.

[4] Our holding also disposes of plaintiff's final contention that the strict 30 minute time limitation is irrational and violative of due process. Faced with one arrested for driving under the influence, the State must balance its need to test him before evidence of his condition metabolizes away with his statutory right to consult counsel before undergoing the test. In view of these two conflicting considerations, we do not believe the legislative grace period of 30 minutes is so irrational or unreasonable as to be in violation of due process. We are not unmindful of plaintiff's contention that the process of "extrapolation" would permit the State to obtain a meaningful

reading of blood alcohol content even several hours after the time of a defendant's arrest. Plaintiff contends there is thus no need for the 30 minute limitation. We elect not to delve into the merits of extrapolation. Such a process, if more desirable than our present statutory system, is plainly one for the legislature to evaluate and adopt or reject.

Plaintiff in this appeal in effect requests that we equate his rights in this civil proceeding to those of a criminal defendant who faces the possibility of incarceration. This we are unwilling to do.

A license to operate a motor vehicle is not a natural or unrestricted right, nor is it a contract or property right in the constitutional sense. It is a conditional privilege, and the General Assembly has full authority to prescribe the conditions upon which licenses may be issued and revoked. However, once issued, a license is of substantial value to the holder and may be revoked or suspended only in the manner and for the causes specified by statute.

*Joyner v. Garrett, supra* at 235, 182 S.E. 2d at 559.

The Division of Motor Vehicles, pursuant to statute, issued plaintiff a license to operate a motor vehicle on the public highways of North Carolina after he met the requirements therefor. By accepting his license and operating a motor vehicle on our highways, plaintiff consented to submitting to a breathalyzer test if arrested for driving under the influence. He was so arrested and, after being advised that the test could not be administered to him more than 30 minutes following his being advised of his rights, plaintiff elected to refuse the test and elected to ignore the warning and his driving privileges were revoked. The record discloses that the Division of Motor Vehicles and the lower courts fully complied with the statute enacted by the legislature pursuant to the police power of the State. This revocation proceeding has now been reviewed by three levels of our court system and we find that plaintiff has received the full and complete protection of the requirements of fairness at every stage. We think the legislature wisely enacted the statute in question. Its purpose is to provide scientific evidence of intoxication not only for the purpose of convicting the guilty and removing them from the public highways for the safety of others, but

also to protect the innocent by eliminating mistakes from objective observation such as a driver who has the odor of alcohol on his breath when in fact his consumption is little or those who appear to be intoxicated but actually suffer from some unrelated cause. Public policy behind such a statute is a sound one. It ensures civil cooperation in providing scientific evidence and avoids incidents of violence in testing by force. It gives an arrested person a reasonable time to make up his mind about the test and yet does not tie up officers involved for an unreasonable amount of time which would interfere with their regular duties.

While plaintiff has no constitutional guarantee to counsel prior to deciding whether to submit to a breathalyzer, he can, of course, hire counsel to challenge proceedings such as that involved in the case before us. We note that plaintiff has taken full advantage of that privilege. Plaintiff was originally arrested for driving under the influence on 7 September 1975. His journey through the administrative tribunal and three levels of our court system has allowed him, so far as the record discloses, to retain his driver's license for over four years from the time of his original arrest.

The decision of the Court of Appeals in affirming the judgment of the superior court is

Affirmed.

Justice BROCK took no part in the consideration or decision of this case.