**Patrick HELES, Kent Braunsreither, Plaintiffs,**

v.

**The STATE OF SOUTH DAKOTA, Fred Zuercher, Secretary, South Dakota Department of Public Safety and Richard Meleen, Director of Driver Improvement Division, South Dakota Department of Public Safety, Defendants.**

**Civ. No. 79–4077.**

United States District Court, D. South Dakota, S. D.

Jan. 21, 1982.

---

John P. Blackburn of Yankton, S. D., for plaintiffs;

Clair B. Ledbetter, Asst. Atty. Gen., Pierre, S. D., for defendants.

## MEMORANDUM DECISION

NICHOL, Senior District Judge.

This case brought by Patrick Heles (Heles) and Kent Braunsreither (Braunsreither) challenges the procedures employed in South Dakota when a person is arrested for DWI, informed of his or her rights under the Implied Consent Statute [1], and the person is requested to submit to a chemical sobriety test. More specifically the plaintiffs allege that it is an unconstitutional denial of Fifth, Sixth and Fourteenth Amendment rights for the arresting officer to refuse to allow the arrested person to consult with an attorney prior to deciding whether to take a chemical alcohol test. The plaintiffs further allege that it is an unconstitutional denial of these rights when the request to contact an attorney is interpreted as a constructive refusal to take the test.

The Court has jurisdiction in this case under 28 U.S.C. section 1343. The action is submitted to the Court entirely on briefs for a decision on the constitutional claims.

On December 9, 1975, an officer of the South Dakota Highway Patrol observed Heles operating his vehicle in an erratic, swerving manner and failing to dim his headlights for oncoming traffic. The officer stopped Heles. After detecting an odor

---

1. SDCL 32–23–10 provides:

Any person who operates any vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, urine, breath or other bodily substance for the purpose of determining the amount of alcohol in his blood, as provided in section 32–23–7, (presumptions arising from chemical analysis of body fluids) provided that such test is administered at the direction of a law enforcement officer having lawfully arrested such person for a violation of section 32–23–1 (driving or control of vehicle prohibited while under the influence of alcohol or drug).

Such person shall be requested by said officer to submit to such analysis and shall be advised by said officer of his right to refuse to submit to such analysis and the provisions of sections 32–23–11 and 32–23–12 in the event of such refusal with respect to the revocation of such person's driving license.

SDCL 32–23–11 provides:

Any person described in section 32–23–10 not given a chemical analysis because of his right to refuse such test shall have the opportunity to demand a hearing pursuant to chapter 1–26 (South Dakota Administrative Procedures Act) before further action is taken under this section. After this opportunity, if the department finds that the law enforcement officer complied with the law and the refusal was made by the person, then the department may revoke for one year both that person's license to drive and any nonresident operating privileges which he may have in his possession. The department may also allow the person to drive under restrictions which it may impose. The provisions of this section do not apply to a person who pleads guilty to an offense in which the results of a chemical analysis test, if taken, would have been admissible in evidence, provided that the plea of guilty is entered before any departmental hearing in regard to the refusal has taken place.

SDCL 32–23–12 provides:

Any person whose license has been canceled, suspended, or revoked by the department of public safety under the provisions of section 32–23–11 shall have the right to file a petition within thirty days thereafter for a hearing in the matter in the circuit court for the county wherein such person was charged with the violation, and such court is hereby vested with jurisdiction and it shall be its duty to set the matter for trial de novo upon ten days' written notice to the department, and thereupon to take testimony and examine into the facts of the case and to determine whether the petitioner's license is subject to cancellation, suspension, or revocation under the provisions of section 32–23–11.

SDCL 32–23–13 provides:

If any operator of a motor vehicle in this state who has been requested to submit to such chemical test fails to invoke the provision of section 32–23–11 which permits him to refuse to submit to such test, then the failure to invoke such provision permitting a refusal to submit to such test shall constitute consent and authority for any authorized physician, laboratory technician, registered nurse, or medical technician or medical technologist to administer such test notwithstanding the age of the operator of such motor vehicle. Said duly authorized physician, laboratory technician, registered nurse, or medical technician or medical technologist shall in no way be liable or held to pay damages to the party to whom such chemical test is administered, provided that such test is administered with usual and ordinary care, and provided that such test is administered at the request of a law enforcement officer.

of alcohol, the officer conducted field sobriety tests, which Heles failed to execute satisfactorily. The officer then arrested Heles for driving while intoxicated and read Heles the South Dakota Implied Consent Warning. When asked if he would consent to a chemical breath test, Heles sought advice from the officer. The officer responded by again reading the implied consent warning, and Heles again asked the officer for advice. Heles was then transported to the police station, where he was again asked if he would take the breathalyzer test. After the repeated requests for advice from the officer were ignored, Heles insisted on calling his attorney. Heles was advised that his actions would be taken as a refusal to submit to the chemical breath test and he was read the *Miranda* Warning. Approximately one hour after Heles was arrested, he had a telephone conversation with his attorney. During that telephone conversation the attorney talked with the officer and twice requested that the officer allow Heles to take the breathalyzer test. The officer denied the requests.

On January 8, 1976, Heles received notice from the Department of Public Safety of intent to revoke his license. Heles requested an administrative hearing. The hearing was held and it was ordered that Heles driver's license be revoked for a period of one year. The circuit court held a trial de novo and affirmed the order of revocation. On December 26, 1978, the South Dakota Supreme Court affirmed the judgment of the circuit court, holding that "the arrested driver has no legal or constitutional right to consult counsel before deciding, and that a request to delay the test for that purpose is, in law, a refusal of the test by the driver." *State v. Heles*, 272 N.W.2d 808, 810 (S.D. 1978), *quoting Peterson v. State*, 261 N.W.2d 405, 410 (S.D.1977).

Kent Braunesreither was arrested at midnight on February 18, 1977, by the same South Dakota Highway Patrol officer that had fourteen months earlier arrested Heles. Braunesreither was read the implied consent warning and asked if he wished to submit to the chemical test. Braunesreither did not respond. He was then taken to the Yankton Police Station and the implied consent warning was again read. Braunesreither asked permission to call his attorney for advice. The officer granted Braunesreither's request; however, Braunesreither was unable to reach his attorney even after several attempts. The arresting officer at approximately 1:30 a. m. again requested that Braunesreither take the breathalyzer test, and advised him that if he did not receive a yes or no answer the officer would consider the response a refusal to submit to the test. Braunesreither again stated that he wanted to talk with his attorney. As the officer was writing out the refusal, Braunesreither decided to take the test. The officer, however, was no longer willing to allow Braunesreither to take the test.

Braunesreither's license was revoked on March 3, 1977. He appealed, requesting an administrative hearing. The license revocation was upheld following the administrative hearing. A trial de novo was then held in the circuit court and again the order for revocation was upheld. The South Dakota Supreme Court affirmed Braunesreither's license revocation on March 1, 1979, holding that "Braunesreither had only one choice, whether or not to take the test; he did not have the right to consult with counsel before deciding." *State v. Braunesreither*, 276 N.W.2d 139, 140 (S.D.1979).

Braunesreither and Heles then joined in this action commenced in federal court, alleging constitutional violations attendant to their arrest for DWI. The action is presented to the Court for a declaratory judgment on the constitutional issue.[2]

**2.** The plaintiffs originally sought a permanent injunction prohibiting the defendants from denying a person arrested for DWI a reasonable opportunity to consult with an attorney prior to deciding whether to take a chemical sobriety test and a temporary injunction enjoining the defendants from taking the plaintiffs' drivers licenses during the pendency of this action. Following their appeal to the Supreme Court of South Dakota, the plaintiffs each had their license revoked for one year for failing to submit to the chemical test. The request for a temporary injunction is therefore moot. The Court has *sua sponte* denominated this action

The right to consult an attorney prior to submitting to a chemical sobriety test has been repeatedly addressed by state supreme courts across the country. The courts holding that a person does not have a constitutional or legal right to counsel prior to testing also generally hold that the request to consult an attorney prior to testing constitutes a refusal. *Fjeldsted v. Cox*, 611 P.2d 382 (Utah 1980); *Seders v. Powell*, 298 N.C. 453, 259 S.E.2d 544 (1979); *State v. Braunesreither*, 276 N.W.2d 139 (S.D.1979); *Brewer v. State Dept. of Motor Vehicles*, 23 Wash.App. 412, 595 P.2d 949 (1979); *State v. Heles*, 279 N.W.2d 808 (S.D.1978); *Blow v. Commissioner of Motor Vehicles*, 83 S.D. 628, 164 N.W.2d 351 (1969); *Cf. Sedlacek v. Pearson*, 204 Neb. 625, 284 N.W.2d 556 (1979).

In denying the right to counsel, these courts reason that the right to counsel is limited to criminal prosecutions. The proceeding to determine or review revocation of a driver's license under the implied consent statute is a civil and administrative proceeding, separate and distinct from the criminal proceeding for driving while under the influence of intoxicating liquor or drugs. These courts hold that the right to counsel does not apply to civil and administrative proceedings. *Blow v. Commissioner of Motor Vehicles, supra; Seders v. Powell*, 298 N.C. 453, 259 S.E.2d 544, 550 (1979); *Agnew v. Hjelle*, 216 N.W.2d 291, 298 (N.D. 1974); *Gottschalk v. Sueppel*, 258 Iowa 1173, 140 N.W.2d 866 (1966); *Finocchairo v. Kelly*, 11 N.Y.2d 58, 226 N.Y.S.2d 403, 181 N.E.2d 427, *cert. denied* 370 U.S. 912, 82 S.Ct. 1259, 8 L.Ed.2d 405 (1966). The following reasoning of the South Dakota Supreme Court exemplifies that employed by other state courts: "The implied consent statute does not sanction a qualified . . . or . . . conditional refusal. The statute requires a licensee to make a choice. In our opinion he is not entitled to the assistance of counsel in making that choice. He either consents to a test with a chance that an unfavorable result may aid in his conviction or he refuses and loses his driving privileges

for one year." *Blow v. Commissioner of Motor Vehicles, supra* 83 S.D. at 633, 164 N.W.2d at 354.

The courts in a growing number of jurisdictions recognize at least a limited right to communicate with counsel prior to making the decision to submit to chemical testing. The right to communicate with counsel, however, is based upon state statute or court rule rather than a Sixth Amendment right to counsel. *Fuller v. State Dept. of Transp.*, 275 N.W.2d 410 (Iowa 1979) (held that the state is required to permit arrested persons, on their request, the right to consult counsel before deciding whether to submit to a chemical sobriety test pursuant to a statute); *Seders v. Powell*, 39 N.C.App. 491, 250 S.E.2d 690, *aff'd* 298 N.C. 453, 259 S.E.2d 544 (1979) (the motorist does not have a constitutional right to the assistance of counsel prior to deciding whether to take the test; the right to counsel is purely statutory); *Prideaux v. State Dept. of Public Safety*, 310 Minn. 405, 247 N.W.2d 385 (1976) (held a limited right to counsel based on the implied consent statute itself and general statutory provisions governing right and access to counsel); *Gooch v. Spradling*, 523 S.W.2d 861 (Mo.App.1975) (court rule specifically requires that a person arrested and held in custody shall be permitted to consult with counsel); *McNulty v. Curry*, 42 Ohio St.2d 341, 71 Ohio Ops.2d 317, 328 N.E.2d 198 (1975) (state statute allows a person to communicate with an attorney following arrest or detention); *Narten v. Curry*, 33 Ohio Misc. 94, 62 Ohio Ops.2d 121, 291 N.E.2d 799 (1972) (a person arrested for DWI is entitled to the right of counsel equally with those charged with major felonies or other criminal acts); *People v. Gursey*, 22 N.Y.2d 224, 292 N.Y.S.2d 416, 239 N.E.2d 351 (1968).

The constitutional issue presented by the plaintiffs appears to be a case of first impression in the federal courts. The jurisdictions which have recognized a limited right to counsel have based their holding on either a state statute or court rule. This

---

one for declaratory judgment on the constitu-

tional question.

Court has located only one case [3] which has unequivocally stated that a person has a constitutionally founded right to consult with counsel prior to deciding to take or refuse a chemical sobriety test.

The civil and criminal nature of proceedings initiated against the person suspected of driving while under the influence of liquor or drugs is inextricably intertwined. Those jurisdictions which hold that the arrested driver does not have a right to contact an attorney prior to making a decision to submit to testing have established a clear demarcation between the initiation of civil and criminal proceedings. This Court finds the distinction much more blurred than these courts would have us believe.

In both cases presented by the plaintiffs, they were stopped by the highway patrol, they were arrested for DWI, they were read the implied consent warning, and at some time they were read the *Miranda* warning. Heles testified that he was familiar with the *Miranda* warnings from television and the news media and that he thought everyone had the right to contact an attorney whenever they were arrested. A number of state courts, [4] although not recognizing a constitutional right to consult with counsel prior to testing, have reversed driver's license revocations based on the fact that the person was confused by the *Miranda* warnings and believed that they had a right to contact an attorney before deciding to accept or refuse testing.

■ The conceptual problem permeating the issue arises from the fact that a person is originally arrested for DWI, a criminal offense. Pursuant to statute, [5] it is only after a lawful arrest that a person may be requested to take a chemical sobriety test. At the time of arrest, the person is in custody and no longer free to leave. The *Miranda* warnings are required when the person is "in custody at the station or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 477, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966); *Orozco v. Texas*, 394 U.S. 324, 327, 89 S.Ct. 1095, 1097, 22 L.Ed.2d 311 (1969). It is therefore at the time of arrest that the *Miranda* warnings are to be given. If these procedures are followed, it is only after the *Miranda* warnings that the person is requested to submit to testing and the implied consent warning is read. It is difficult for the Court to reconcile the apparent contradictions between the *Miranda* warnings, which allow the right to counsel, and an implied consent statute, which denies the person the right to consult an attorney prior to making a decision to submit to testing. It must be impossible for the driver, forced to make an immediate decision which later may be used to convict him or her of a crime, to reconcile these contradictions.

Those courts that rely on the civil/criminal distinction to hold that a person does not have the right to contact an attorney prior to making a decision regarding testing have ignored the fact that the person is originally arrested for a criminal offense. It is at the time of arrest that certain rights are afforded to the accused, including the right to consult with an attorney prior to making a statement. The obvious and intended effect of the implied consent law is to coerce the driver suspected of driving under the influence to consent to the sobriety test. The results of the blood alcohol level are then admissible against the driver in a subsequent prosecution for DWI. In effect the threat of license revocation (the

**3.** *Troy v. Curry*, 36 Ohio Misc. 144, 65 Ohio Ops.2d 194, 303 N.E.2d 925 (1973). "The refusal to permit a person accused of a crime, (DWI) which is now classified as a serious misdemeanor, to consult with counsel, would be clearly unconstitutional under both the Sixth and the Fourteenth Amendments 'Due Process of Law' clauses of the United States Constitution." *Id.* 303 N.E.2d at 927.

**4.** *See Rees v. Department of Motor Vehicles*, 8 Cal.App.3d 746, 87 Cal.Rptr. 456 (4th Dist. 1970); *Calvert v. State Dept. of Revenue, Mo-*

*tor Vehicle Div.*, 184 Colo. 214, 519 P.2d 341 (1974); *State v. Severino*, 56 Hawaii 378, 537 P.2d 1187 (1975); *Swan v. Department of Public Safety*, 311 So.2d 498 (La.App.1975); *State Dept. of Highways v. Beckey*, 291 Minn. 483, 192 N.W.2d 441 (1971); *Wiseman v. Sullivan*, 190 Neb. 724, 211 N.W.2d 906 (1973). *Cf. Shoemaker v. State, Dept. of Motor Vehicles*, 11 Wash.App. 860, 526 P.2d 908 (1974).

**5.** SDCL 32-23-10.

civil proceeding) is a tool employed at the time of arrest to gather evidence against the driver to utilize in a later criminal prosecution. *Prideaux v. State Dept. of Public Safety*, 310 Minn. 405, 247 N.W.2d 385, 388–89 (1976). To say that the person does not have a right to contact an attorney prior to deciding whether to take the sobriety test, because the license revocation proceeding, initiated once the test is refused, is civil in nature totally ignores the fact that the person is in custody pursuant to an arrest on a criminal charge. The proceedings are all criminal in nature until testing is actually refused.

SDCL 32–23–10 specifically provides that pursuant to a lawful arrest for driving under the influence in violation of SDCL 32–23–1, the person shall be requested to submit to a chemical analysis and shall be advised of the right to refuse such testing. If the person refuses testing, he or she must be advised that his or her driver's license may be revoked pursuant to SDCL 32–23–11 for a period of one year. The fact that by statute, South Dakota allows the arrested driver to refuse to take the test brings into play important legal considerations. The person must make a critical and binding decision, which will effect him or her in subsequent legal proceedings. The penalties involved are significantly different, and in many instances the civil penalty imposed for refusal of testing may be far more severe than the criminal penalty imposed for driving under the influence.[6]

Invocation of the implied consent statute affects important interests of the driver. *Holland v. Parker*, 469 F.2d 1013, 1016 (8th Cir. 1972). The United States Supreme Court has recognized that once a driver's license is issued the continued possession of the license may be essential in the pursuit of a livelihood, and that as such, whether denominated a right or a privilege, it is an entitlement that cannot be taken away without the procedural due process mandated by the Fourteenth Amendment. *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90, 94 (1971); *Dixon v. Love*, 431 U.S. 105, 112, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977). The revocation of a driver's license for one year may have a far more devastating impact on the ordinary driver than the criminal sanctions imposed following a conviction for DWI. Depending upon the individual driver's circumstances, however, the decreased possibility of a criminal conviction may be worth giving up driving privileges for a year. If the driver is involved in a serious accident, the test results may be important evidence in a more serious criminal proceeding, and under such circumstances the driver may wish to refuse testing. A decision under these circumstances is just as critical and equally as binding as the decision to make a statement following arrest. *Prideaux v. State Dept. of Public Safety, supra* 247 N.W.2d at 390.

To demand that a licensed driver be subjected to a choice involving important interests, and possibly an intrusion into his or her body, to establish evidence of guilt, without first allowing the person to contact an attorney, would be inconsistent with the due process demands of both the Sixth and Fourteenth Amendments.

A review of the case law in South Dakota reveals further due process problems. There is a noted inconsistency in approach by the various officers, and sometimes by the same officer, as indicated in this case, when an individual requests the right to contact an attorney prior to sub-

---

6. The conviction for DWI, if a first offense shall result in suspension of the person's drivers license for a period of thirty days; however, the court in its discretion may issue an order allowing the person to drive for purposes of employment. SDCL 32–23–2. The first conviction is a Class 1 misdemeanor and is also punishable by one year imprisonment in a county jail or one thousand dollar fine, or both. SDCL 22–6–2.

The second conviction for DWI is also a Class 1 misdemeanor. In pronouncing sentence, the Court shall order the defendant's drivers license suspended for sixty days. SDCL 32–23–3.

It is not until a person has been convicted of a third DWI charge that the statute requires revocation of the driver's license for one year. SDCL 32–23–4. The third and subsequent offenses are considered a Class 6 felony and are punishable by two years imprisonment in the state penitentiary or a fine of two thousand dollars, or both. SDCL 22–6–1.

mitting to a chemical test. The refusal of the arresting officer to permit a particular driver to make a phone call, and at the same time allowing other drivers arrested for the same offense to attempt to contact an attorney prior to submitting to a chemical test, is an arbitrary use of discretionary authority. After arrest, defendants are entitled to equal and fair treatment. Apparently, the decision whether to allow a person arrested for DWI to call an attorney prior to consenting or refusing to take the test is a decision that remains within the sole discretion of the officer. This discretion allows the officer to determine what is and what is not a constructive refusal to take the test, and consequently whether a given driver will lose his or her driver's license.[7] The denial of a phone call along with the threat of losing one's license for a year when arbitrarily imposed is a coercive technique rather than an attempt to expedite the test, and ultimately to effectuate the purpose of the implied consent law. Law enforcement officials may not, without justification, prevent the driver arrested for DWI the opportunity to contact a lawyer prior to submitting to testing, if such a request is made and if it does not unduly interfere with the administration of the test. As a matter of fairness, the government cannot compel people to make binding decisions concerning their legal rights without the assistance of counsel, when such assistance has been requested.

■ The Court recognizes the imminent danger that drunk drivers present to the general public using the highways and society's interest in removing these drivers from the highways. The public, however, must be protected legally, and not at the expense of the constitutional rights of others. The Court therefore holds that due process demands that the person arrested for DWI has a constitutional right to request to speak with an attorney prior to making the decision whether to submit to

testing. The simple request to contact an attorney cannot be interpreted as a constructive refusal. The public interest, however, requires a balancing between the exercise of that right and the protection of society.

■ The legislature enacted the implied consent law to establish "a fair, efficient and accurate system of detection and prevention of drunk driving. The immediate purpose of the implied consent law is to obtain the best evidence of blood alcohol content at the time of the arrest of the person reasonably believed to be driving while intoxicated." *Peterson v. State*, 261 N.W.2d 405, 408 (S.D.1977). The test does not need to be administered immediately after arrest to determine whether the person is under the influence of alcohol. In fact, the breathalyzer requires a twenty to thirty minute warm-up period. Allowing the arrested driver a reasonable opportunity to use the telephone to contact an attorney during this period would not delay the administration of the test, affect the accuracy of the test, nor defeat the purpose of the implied consent law. If an attorney cannot be reached by telephone within a reasonable period of time, the person may need to make an independent decision without aid of counsel, so as not to unnecessarily delay the administration of the test.

■ The Court must now apply the above holding to the specific factual situation presented by Heles and Braunsreither. Braunsreither was arrested at approximately midnight. He was taken to the Yankton Police Station and allowed to place several calls to his attorney. At 1:30 Braunsreither still had not been able to reach his attorney. At that time the officer informed Braunsreither that he would need to make an independent decision as to whether he would submit to the breathalyzer. Braunsreither ignored this warning and again attempted to call his attorney. It was only after the officer began completing the re-

---

7. *See Holland v. Parker*, 469 F.2d 1013, 1015 (8th Cir. 1972), where the Court stated that "due process does require a lawful arrest as a precondition to application of the statute *to protect the driver against arbitrary police conduct* and to protect the driver's Fourth Amend-

ment rights." (emphasis added) Although that case involved the constitutionality of South Dakota's original implied consent law, where a lawful arrest was not required under the statute, the Court believes the reasoning is equally applicable in this situation.

fusal form that Braunsreither agreed to submit to testing. The officer, however, was no longer willing to administer the breathalyzer test to Braunsreither.

The Court finds that Braunsreither's due process rights were not violated and that he was treated fairly at the time of his arrest. Braunsreither was allowed to call his attorney. In fact, during the hour at the station he attempted several times to contact his attorney. He was not able to reach his attorney within a reasonable period of time and was informed by the officer that he would need to make an independent decision, and that if he did not make that decision it would be treated as a refusal. Braunsreither was not forced to make an independent decision until one and one-half hours after arrest. He could not expect the officer to delay the test indefinitely while he continued his unsuccessful attempts to contact counsel. To delay the test for a longer period of time would surely impair the accuracy of the test and defeat the purpose of the implied consent law. Braunsreither's right to contact an attorney was vindicated in the above situation and he cannot complain that his rights were violated.

■ Heles presents a very different factual situation, however. Heles expressed confusion about the legal ramifications of any decision he would make and repeatedly requested advice from the officer. When the officer was unable to give him advice, Heles requested permission to call his attorney. The simple request to call his attorney was interpreted as a constructive refusal. It was only after the refusal was written up that Heles was allowed to place his call. While still on the phone with his attorney, Heles requested that he be allowed to take the breathalyzer test. The attorney also requested that Heles be allowed to take the test. Both requests were denied. To take Heles' request to contact an attorney for advice as a constructive refusal to submit to testing is an arbitrary abuse of discretionary authority and such action cannot survive constitutional scrutiny. Under these facts, the Court finds that Heles made a reasonable request, within a reasonable period of time, and the request to contact his attorney was not made to delay the administration of the test or to defeat the purpose of the implied consent law.

In summary, the Court holds that when a person is arrested for DWI and the person requests to speak with an attorney prior to submitting to testing, the person must be allowed a reasonable opportunity to attempt to contact an attorney. If an attorney cannot be reached within a reasonable period of time, the person may need to make an independent decision without the aid of counsel. The Court finds in the present case that while Braunsreither's constitutional rights were protected, these same rights were denied in the Heles case.

The foregoing memorandum decision constitutes the Court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure. The Clerk of the Court shall prepare an appropriate judgment.