STATE OF NORTH CAROLINA v. THOMAS ALLEN HARRIS

No. 7917SC450

(Filed 16 October 1979)

1. **Searches and Seizures § 12— investigatory stop—probable cause not required**

An officer did not need "probable cause" to make an investigatory stop of defendant to question him about a shooting, and the stop was lawful where it was based on reasonable suspicion of the commission of a crime.

2. **Criminal Law § 84; Searches and Seizures § 12— investigatory stop outside officer's jurisdiction—admissibility of seized evidence**

Even if a deputy sheriff's investigatory stop of defendant was illegal because it was made outside the limits of his territorial jurisdiction, the stop was not unconstitutional so as to require the exclusion of a pistol seized during the stop. Furthermore, the stop was not a substantial violation of G.S. Ch. 15A which would require exclusion of the pistol. G.S. 15A-974.

3. **Criminal Law § 75.6— sufficiency of constitutional warnings**

Warnings given to defendant, including a warning that "if you answer any questions now, you may stop at anytime and ask for a lawyer," substantially complied with the requirements of the *Miranda* decision.

4. **Criminal Law § 89.3— testimony that statements made to others—foundation for testimony by others—corroboration**

A witness's testimony that he had told two deputies and the prosecutor that defendant had approached him about killing the deceased was competent either as laying a foundation for the testimony of the deputies or possibly as corroboration even though he had not yet been impeached.

5. **Homicide § 21.7— second degree murder—sufficiency of evidence**

The State's evidence was sufficient for the jury in a second degree murder prosecution where it tended to show that defendant and deceased were seen together getting into the same car some five days before the badly decomposed body of deceased was found; death was caused by a gunshot wound in the back; the fatal bullet was fired from a pistol found in defendant's possession; and defendant had approached a witness about killing deceased because of something deceased had done to defendant's girl friend.

6. **Homicide § 26— second degree murder—instructions on intent**

　　The trial court's instructions adequately explained to the jury that while an intent to kill is not a necessary element of second degree murder, an intentional act which shows malice and proximate cause of death is an essential part of the crime.

7. **Homicide § 28.1— self-defense—misadventure—instructions not required**

　　The evidence in a second degree murder prosecution did not require the court to instruct on self-defense or misadventure.

APPEAL by defendant from *Albright, Judge.* Judgment entered 2 February 1979 in Superior Court, STOKES County. Heard in the Court of Appeals 20 September 1979.

Defendant was charged with the second degree murder of Donnie Wayne Martin. Defendant and deceased were seen together getting into the same car on 18 July 1978. The badly decomposed body of deceased was found five days later. The pathologist who performed an autopsy the next day was of the opinion that death occurred as many as ten days but at least two days before the body was discovered. Death was caused by a gunshot wound in the back. The fatal bullet was recovered from the body. Opinion evidence was presented that the bullet was fired from a pistol found in the possession of defendant on 30 July. The pistol was seized when a Stokes County deputy sheriff stopped defendant to question him about the shooting. It was observed by the deputy on the front seat of defendant's car. Charles Bullins testified that defendant approached him about killing deceased for something he had done to defendant's girl friend.

Defendant took the stand in his own behalf and denied killing the deceased or asking Charles Bullins to help him kill the deceased. Defendant testified that Charles Bullins approached him on 28 June, borrowed his pistol and did not return it until about a month later. Defendant produced several witnesses who testified to the effect that Bullins was in possession of the pistol during the time period when it was used to kill deceased. The State offered rebuttal evidence to the effect that defendant had approached another person to get him to testify he saw defendant lend the pistol to Charles Bullins on 28 June even though he was not present when the gun was allegedly lent. Defendant appeals from his conviction for second degree murder.

*Attorney General Edmisten, by Associate Attorney Lucien Capone III, for the State.*

*Ronald M. Price, for defendant appellant.*

VAUGHN, Judge.

Defendant presents ten questions for our consideration, the first of which is alleged error in the denial of his motion to suppress the evidence of the pistol. The trial judge conducted a *voir dire* and made findings summarized as follows. Stokes County Deputy Sheriff Ray V. Collins was informed by the local assistant district attorney that defendant had been implicated in the murder of deceased by an informer. Deputy Collins had not been given the name of the informer but was given defendant's name, description, address and make of car along with other details including the fact defendant was carrying the weapon used to kill deceased. Deputy Collins began verifying this information. In conducting this investigation, he saw defendant driving an automobile just across the Stokes County line in Forsyth. Using his blue light, he stopped defendant and asked him to produce his license and to step out of the car. On being asked for the registration papers, defendant went to the passenger side door. Deputy Collins followed and observed for the first time the butt of a pistol on the seat in plain view. He stepped between defendant and the car and took possession of the pistol. He advised that he was investigating defendant's involvement in the murder of deceased and further advised him of his *Miranda* rights. Deputy Collins asked if he could take the pistol and have it examined in the SBI laboratory and defendant consented. A State Highway Patrolman witnessed the consent of defendant to the surrender of the pistol. Deputy Collins took it and defendant was then allowed to proceed on his way. Defendant testified on *voir dire* that he surrendered the gun under threat of deadly force and prosecutions for carrying a concealed weapon and motor vehicle registration violations. However, the State's evidence rebutted, this and the trial judge found defendant was not threatened, coerced nor intimidated neither by any show of violence nor threat of arrest. These findings of fact are supported by the evidence in the record and are, therefore, conclusive on appeal. *State v. Stinson*, 297 N.C. 168, 254 S.E. 2d 23 (1979).

[1, 2]   Defendant argues that this event constituted a violation of his constitutional rights and an unlawful arrest. He maintains that Deputy Collins lacked probable cause to arrest him because of insufficient reliability of the informant upon whose information the stop was made and that Deputy Collins was outside his territorial jurisdiction in violation of G.S. 15A-402(b). This encounter was an investigatory stop based on reasonable suspicion of the commission of a crime. To make the stop, Deputy Collins did not need "probable cause" which is a stricter standard than is required in such investigatory situations. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed. 2d 612 (1972); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968); *State v. McZorn*, 288 N.C. 417, 219 S.E. 2d 201 (1975), *death sentence vacated*, 428 U.S. 904, 96 S.Ct. 3210, 49 L.Ed. 2d 1210 (1976). Defendant contends Deputy Collins acted illegally because G.S. 15A-402(b) limits his jurisdiction to Stokes County and not Forsyth County where he made the stop. The statute speaks in terms of "arrest" and, without reaching the question of whether these events blossomed from an investigatory stop into an "arrest" in terms of the statute, we note that the stop was constitutional under *Adams v. Williams, supra.* Even if an "arrest" in terms of the statute, this is not a "substantial" violation of Chapter 15A which would require exclusion of the evidence. G.S. 15A-974; *see also State v. Eubanks*, 283 N.C. 556, 196 S.E. 2d 706, *reh. den.*, 285 N.C. 597 (1973); *State v. Matthews*, 40 N.C. App. 41, 251 S.E. 2d 897 (1979); *State v. Mangum*, 30 N.C. App. 311, 226 S.E. 2d 852 (1976).

The deputy's taking possession of the gun was permissible and justified. As he followed defendant to the passenger's side of the car and first observed the gun, it came into plain view inadvertently as he continued his investigation of defendant's involvement in the murder. Deputy Collins had a right to be where he was doing what he was doing and did have reason to believe the pistol was the murder weapon. He also had reason to protect his own safety. Thus, his observance and initial taking of the gun was lawful. *Adams v. Williams, supra; Terry v. Ohio, supra.* His taking of the gun for further investigation was with defendant's uncoerced consent. *State v. Reams*, 277 N.C. 391, 178 S.E. 2d 65 (1970), *cert. den.*, 404 U.S. 840, 92 S.Ct. 133, 30 L.Ed. 2d 74 (1971).

Defendant assigns error in the scope of the State's cross-examination of him in the *voir dire* hearing on the motion to

suppress. He contends the cross-examination was improperly extended into matters irrelevant to the issue of suppression of evidence. A presiding trial judge has wide discretion in controlling the scope of cross-examination and we see no abuse of that discretion in this case. *State v. Daye,* 281 N.C. 592, 189 S.E. 2d 481 (1972). Further, it is presumed that a judge hearing a matter without a jury disregards any improper evidence unless it affirmatively appears, which is not shown here, that he was influenced by the evidence. *State v. Sneed,* 14 N.C. App. 468, 188 S.E. 2d 537 (1972).

[3] In his third assignment of error, defendant argues that the trial judge erroneously found that he had waived his constitutional rights. Deputy Collins read defendant his rights after he observed and took into his possession what he thought to be the murder weapon. Defendant signed a written waiver of his rights after they were explained to him. The trial court's finding that defendant affirmatively and knowingly waived his rights is supported by competent evidence in the record and is therefore conclusive on appeal. *State v. Stinson, supra.* Defendant contends that the wording of the waiver was wrong in part where it provided:

> "You can talk with a lawyer for advice and have a lawyer present before and during this or any other interview. If you cannot afford a lawyer, one can be appointed by the State of North Carolina to represent and advise you. If you answer any questions now, you may stop at anytime and ask for a lawyer."

These words convey the substance and required information of the *Miranda* warning on these rights. This substantial conformity with *Miranda* is sufficient. *State v. Haskins,* 278 N.C. 52, 178 S.E. 2d 610 (1971).

[4] As the prosecutor was closing his direct examination of Charles Bullins who testified about a proposition defendant had made to him to kill deceased, he questioned Bullins about when and to whom he first related this information. Bullins answered that he had told the same story to two deputies and the prosecutor. Defendant maintains this was error. No objection was raised at trial and any possible error was thereby waived. Moreover, there was no error in admitting the testimony, either

State v. Harris

as laying a foundation for the testimony of the deputies he told of the murder solicitation or possibly as corroboration even though he had not yet been impeached. *State v. Carter*, 293 N.C. 532, 238 S.E. 2d 493 (1977).

Defendant has grouped all other objections to evidentiary admissions under a separate assignment of error without any argument or citation of authority. This assignment is, therefore, overruled.

[5] Defendant's fifth assignment of error brings to us the denial of his motions for dismissal at the close of State's evidence and at the close of all the evidence. Considered in a light most favorable to the State, the evidence was sufficient to take the case to the jury. *See, e.g., State v. Williams*, 269 N.C. 376, 152 S.E. 2d 478 (1967).

[6] Defendant's last four arguments deal with the trial judge's instruction to the jury. Two deal with the manner in which the trial judge instructed on the law of second degree murder. Defendant contends error in the instruction on the type of intent required for the crime. When the charge is considered as a whole and those portions attacked by defendant are considered contextually, the jury instruction was without error. The instruction adequately explains the law on second degree murder to the effect that while intent to kill is not a necessary element of second degree murder, an intentional act which shows malice and proximate cause of death is an essential part of the crime. *See State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978); *State v. Wrenn*, 279 N.C. 676, 185 S.E. 2d 129 (1971).

Defendant excepts to the trial judge's instruction on the presumptions arising from the intentional infliction of a wound proximately causing death. The very words objected to by defendant were recently approved by the Supreme Court on the same argument and similar facts in *State v. Wilkins*, 297 N.C. 237, 254 S.E. 2d 598 (1979).

[7] In his final assignment of error, defendant contends the trial judge erred in giving no instruction concerning the effect of self-defense or misadventure. To be entitled to this instruction, there must be some evidence that these matters are part of the case. *State v. Brooks*, 37 N.C. App. 206, 245 S.E. 2d 564 (1978). No such

evidence was presented by this case. The burden was properly placed on the State to prove beyond a reasonable doubt all the elements of the crime and negate any defenses offered by defendant. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed. 2d 508 (1975).

No error.

Judges ERWIN and HILL concur.