STATE OF NORTH CAROLINA v. ROBERT RIGDON SCRUGGS, JR.

No. COA10-921

(Filed 1 March 2011)

**Search and Seizure— traffic stop—motion to suppress evidence—reasonable suspicion—probable cause**

The trial court did not err in a driving while impaired case by denying defendant's motion to suppress evidence obtained as a result of a stop and arrest. The stop by the officers was based on reasonable suspicion and the arrest was based on probable cause. Further, even if the stop and arrest violated N.C.G.S. § 15A-402 based on a university police officer making the stop outside of his statutory jurisdiction, it did not rise to the level of a substantial violation.

Appeal by defendant from judgment entered 21 April 2010 by Judge Anderson D. Cromer in Guilford County Superior Court. Heard in the Court of Appeals 11 January 2011.

*Attorney General Roy Cooper, by Assistant Attorney General John W. Congleton, for the State.*

*James H. Monroe for defendant-appellant.*

STATE v. SCRUGGS

[209 N.C. App. 725 (2011)]

BRYANT, Judge.

Where no error in a defendant's stop and arrest rises to the level of a substantial violation of Chapter 15A, the trial court does not err in denying the defendant's motion to suppress the evidence obtained as a result thereof.

*Facts*

Around 11 p.m. on 17 July 2009, Officers J.B. Smith and M.A. Graves of the University of North Carolina at Greensboro ("UNCG") Police Department, were assigned to assist with a traffic checkpoint being conducted by the North Carolina A & T State University ("A&T") Police Department on the A&T campus in Greensboro. The checkpoint was canceled due to rain, and Officers Smith and Graves instead began a roving patrol in Guilford County looking for traffic violations, with an emphasis on driving while impaired offenses. At the time, a mutual aid agreement existed between the UNCG Police Department and the City of Greensboro which extended the jurisdiction of the UNCG Police Department in certain situations.

While observing traffic on Elm Street in downtown Greensboro, the officers saw defendant Robert Rigdon Scruggs, Jr., driving towards them on a moped. Officer Smith noticed defendant come to a "jerky" stop at an intersection and appear to have trouble maintaining his balance. Once the stoplight changed, defendant passed the car ahead of him on the right and made a right turn onto McGee Street. Officer Smith also believed defendant's helmet was not in compliance with Department of Transportation regulations. Based on these observations, the officers activated their blue lights and pulled defendant over. Officer Smith testified that, at the time he stopped defendant, he had probable cause to believe he had made an illegal turn and was wearing an illegal helmet, but only reasonable suspicion that defendant was driving while impaired.

Defendant first told the officers he had not been drinking, but then admitted he had consumed half a glass of red wine with his dinner. During this exchange, Officer Smith noted a moderate odor of alcohol and defendant's thick speech. The officers administered three field sobriety tests and noted several possible signs of impairment. On this basis, the officers arrested defendant for driving while impaired and transported him to a mobile Intoxilyzer unit. Defendant refused to submit a breath sample, stating "if I take it, I'll be admitting that I am impaired."

On 2 November 2009, defendant was indicted for driving while impaired and habitual driving while impaired. Defendant entered a plea of not guilty and the matter came on for trial during the 19 April 2010 session of Guilford County Superior Court. During the trial, defendant filed a motion to suppress evidence obtained and statements made following his arrest. Following a hearing outside the presence of the jury, the trial court announced findings of fact and conclusions of law in open court and denied defendant's motion. No written order was entered.

During the State's evidence, defendant stipulated to having three prior DWI convictions within ten years of the current charge. The jury returned a guilty verdict, and defendant was sentenced as a habitual impaired driver, receiving an active term of fifteen to eighteen months in prison. Defendant appeals.

### Standard of Review

On appeal, defendant argues the trial court committed reversible error in denying his motion to suppress. We disagree.

Our standard of review from denial of a motion to suppress is well-established:

> "This Court's review of a trial court's denial of a motion to suppress in a criminal proceeding is strictly limited to a determination of whether the court's findings are supported by competent evidence, even if the evidence is conflicting, and in turn, whether those findings support the court's conclusions of law." *In re Pittman*, 149 N.C. App. 756, 762, 561 S.E.2d 560, 565 (citation omitted), *disc. review denied*, 356 N.C. 163, 568 S.E.2d 608 (2002), *cert. denied*, 538 U.S. 982, 155 L. Ed. 2d 673 (2003). "[I]f so, the trial court's conclusions of law are binding on appeal." *State v. West*, 119 N.C. App. 562, 565, 459 S.E.2d 55, 57, *disc. review denied*, 341 N.C. 656, 462 S.E.2d 524 (1995). "If there is a conflict between the state's evidence and defendant's evidence on material facts, it is the duty of the trial court to resolve the conflict and such resolution will not be disturbed on appeal." *State v. Chamberlain*, 307 N.C. 130, 143, 297 S.E.2d 540, 548 (1982).

*State v. Veazey*, —— N.C. App. ——, ——, 689 S.E.2d 530, 532 (2009), *disc. review denied*, 363 N.C. 811, —— S.E.2d —— (2010). "However, the trial court's conclusions of law are reviewed *de novo* and must be legally correct." *State v. Hernandez*, 170 N.C. App. 299, 304, 612 S.E.2d 420, 423 (2005) (citation omitted).

*Analysis*

Unlawfully seized evidence is subject to suppression as provided in § 15A-974:

Upon timely motion, evidence must be suppressed if:

(1) Its exclusion is required by the Constitution of the United States or the Constitution of the State of North Carolina; or

(2) It is obtained as a result of a substantial violation of the provisions of this Chapter. In determining whether a violation is substantial, the court must consider all the circumstances, including:

a. The importance of the particular interest violated;

b. The extent of the deviation from lawful conduct;

c. The extent to which the violation was willful;

d. The extent to which exclusion will tend to deter future violations of this Chapter.

N.C. Gen. Stat. § 15A-974 (2009). Here, defendant concedes that his stop by the officers was based on reasonable suspicion and his arrest was based on probable cause; thus, both the traffic stop and arrest were constitutional. *See State v. Styles*, 362 N.C. 412, 415, 665 S.E.2d 438, 440 (2008); *State v. Mangum*, 30 N.C. App. 311, 314, 226 S.E.2d 852, 854 (1976). We are then left to determine whether defendant's stop and arrest were the result of a substantial violation of Chapter 15A of our General Statutes. Our review of the record indicates that the trial court considered each of the factors listed in § 15A-974, and that its findings that the stop was constitutional, that any violation of Chapter 15A was not willful and there was nothing to suggest that suppression of the evidence would deter future violations of Chapter 15A are fully supported by competent evidence. We next consider whether the trial court's conclusions were legally correct.

The UNCG Police Department is established, and its jurisdiction defined, by our General Statutes, which provide:

The Board of Trustees of any constituent institution of The University of North Carolina, or of any teaching hospital affiliated with but not part of any constituent institution of The University of North Carolina, or the Board of Directors of the North Carolina Arboretum, may establish a campus law enforcement agency and

employ campus police officers. Such officers shall meet the requirements of Chapter 17C of the General Statutes, shall take the oath of office prescribed by Article VI, Section 7 of the Constitution, and shall have all the powers of law enforcement officers generally. The territorial jurisdiction of a campus police officer shall include all property owned or leased to the institution employing the campus police officer and that portion of any public road or highway passing through such property or immediately adjoining it, wherever located.

N.C. Gen. Stat. § 116-40.5(a) (2009). Further,

[a] campus police officer: (i) appointed by a campus law-enforcement agency established pursuant to G.S. 116-40.5(a); (ii) appointed by a campus law enforcement agency established under G.S. 115D-21.1(a); or (iii) commissioned by the Attorney General pursuant to Chapter 74E or Chapter 74G of the General Statutes and employed by a college or university which is licensed, or exempted from licensure, by G.S. 116-15 may arrest a person outside his territorial jurisdiction when the person arrested has committed a criminal offense within the territorial jurisdiction, for which the officer could have arrested the person within that territory, and the arrest is made during such person's immediate and continuous flight from that territory.

N.C. Gen. Stat. § 15A-402(f) (2009). However, despite these jurisdictional restrictions, campus police departments, such as UNCG's, "may enter into joint agreements with the governing board of any municipality to extend the law enforcement authority of campus police officers into any or all of the municipality's jurisdiction and to determine the circumstances in which this extension of authority may be granted." N.C.G.S. § 116-40.5(b).

Section 3.2 of the mutual aid agreement between the City of Greensboro and the UNCG Police Department extended the authority and jurisdiction of UNCG officers to make arrests off campus when they: 1) have probable cause to believe a felony has been committed; 2) have probable cause to believe that a misdemeanor has been committed and the person to be arrested might otherwise evade apprehension or cause harm to himself, other people or property unless immediately arrested; 3) witness a traffic offense or misdemeanor in a specific area near campus; and 4) see an individual for whom there is an outstanding warrant or order for arrest. Here, the first, third and fourth situations were not present. Rather, the State

asserts the officers arrested defendant under the second provision because they had probable cause to believe defendant had committed a misdemeanor in their presence and could harm himself or others if not arrested. As noted above, defendant does not dispute the constitutionality of his arrest, but instead argues that the underlying stop was illegal and the resulting arrest was a substantial violation of § 15A-402. We are not persuaded by defendant's contention.

"The evidence obtained in [a] search and seizure need not be excluded even if the arrest out of which the search and seizure arose was unauthorized under G.S. 15A-402." *State v. Melvin*, 53 N.C. App. 421, 428, 281 S.E.2d 97, 102 (1981), *cert. denied*, 305 N.C. 762, 292 S.E.2d 578 (1982). In *State v. Harris*, we considered the effect of a law enforcement officer making a stop outside his statutory jurisdiction pursuant to N.C.G.S. § 15A-402(b). 43 N.C. App. 346, 349, 258 S.E.2d 802, 804, *appeal dismissed*, 298 N.C. 808, 261 S.E.2d 920 (1979). In that case, a sheriff's deputy made the stop outside the county where he had jurisdiction. *Id.* Recognizing that "[t]he statute [§ 15A-402] speaks in terms of 'arrest' and, without reaching the question of whether these events blossomed from an investigatory stop into an 'arrest' in terms of the statute, we note that the stop was constitutional . . . ." *Id.* We then concluded that "[e]ven if an 'arrest' in terms of the statute, this is not a 'substantial' violation of Chapter 15A which would require exclusion of the evidence." *Id.*; *see also Mangum*, 30 N.C. App. at 314, 226 S.E.2d at 854 ("The technical violation of this statute [G.S. 15A-402] . . . does not necessarily require exclusion of evidence obtained in the search incident to the arrest.").

Although *Harris* dealt with subsection (b), rather than subsection (f), as here, nevertheless, we find it instructive. Both subsections deal with the jurisdiction of various law enforcement officers and specify who they "may arrest." Section 15A-402(f) deals with arrests, and here, defendant's arrest was both constitutional and specifically permitted under terms of the mutual aid agreement as authorized by § 116-40.5(a). Just as the out-of-jurisdiction arrest following a constitutional stop in *Harris* was not a substantial violation of Chapter 15 meriting suppression of evidence, we believe defendant's stop and arrest here, even if in violation of § 15A-402, does not rise to the level of a substantial violation. Therefore, the trial court did not err in denying defendant's motion to suppress the evidence obtained.

IN RE N.T.S.

[209 N.C. App. 731 (2011)]

Affirmed.

Judges McGEE and BEASLEY concur.