STATE OF NORTH CAROLINA
v.
JOSHUA K. CAUDILL

No. COA12-1064

Filed 7 May 2013

**Confessions and Incriminating Statements—motion to suppress statements—right to be taken before court official without unnecessary delay following arrest**

The trial court did not err in a first-degree murder, robbery with a dangerous weapon, and felony conspiracy to commit robbery with a dangerous weapon case by denying defendant's second motion to suppress his statements to officers of the Oak Island Police Department. The trial court's findings of fact supported its conclusion that there was no violation of defendant's rights under N.C.G.S. § 15A-501(2) or defendant's constitutional right to be taken before a court official without unnecessary delay following his arrest.

Appeal by defendant from judgments entered 1 June 2010 by Judge Thomas H. Lock in Brunswick County Superior Court. Heard in the Court of Appeals 13 February 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Nicholaos G. Vlahos, for the State.*

*Russell J. Hollers III for defendant-appellant.*

BRYANT, Judge.

Where the trial court's findings of fact supported its conclusion that there was no violation of defendant's statutory rights pursuant to section 15A-501(2) of the North Carolina General Statutes and defendant's constitutional right to be taken before a court official without unnecessary delay following his arrest, we hold no error.

*Facts and Procedural History*

On 5 November 2007, defendant Joshua K. Caudill was indicted on charges of first degree murder, robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon. Evidence at trial tended to show that on 8 July 2007, defendant, James Martin, Whitney Jenkins, and Amber Wood ("the four subjects") were living together at a home located at Northwest 10th Street, Oak Island, North Carolina. The four subjects discussed plans to rob Phillip Cook in order to obtain money to pay for rent and buy drugs. Phillip Cook was the owner of Island Way Restaurant and Jenkins was an employee there.

Jenkins testified that she knew Cook would close the restaurant at about 10:00 p.m. and would have more than $500.00 on his person. The plan was that defendant and Martin would be dropped off at Cook's residence and Jenkins and Wood would wait at the restaurant until Cook left. Jenkins and Wood were to notify defendant and Martin of Cook's departure from the restaurant – a plan to which everyone agreed.

Jenkins and Wood dropped off defendant and Martin at Cook's residence. Defendant and Martin were dressed in hoodies and jeans and each was armed with a bedpost. Jenkins and Wood then drove to the Island Way Restaurant and waited outside in their vehicle. At about 10:00 pm, Jenkins and Wood saw Cook leave the restaurant carrying a brown briefcase, and enter his truck. Wood called defendant to tell him that Cook had left the restaurant and was on his way to his residence.

Jenkins and Wood followed Cook's truck to Cook's residence. Approximately five minutes after Jenkins and Wood began sitting in their parked car at the end of Cook's driveway, defendant and Martin came out of Cook's residence. They were out of breath and had Cook's brown briefcase and the bedposts with them. Jenkins recalled one of them saying that they had "hit [Cook] and knocked him out." The four subjects returned to their residence. They split the $500.00 in cash found

in the brown briefcase – half went to defendant and Wood and the other half to Martin and Jenkins. Days later, the four subjects learned through a newscast that Cook had died.

Doctor William Kelly, a pathologist for the State Medical Examiner, performed an autopsy on Cook's body on 10 July 2007. Dr. Kelly testified that the cause of death was "blunt head injury to the . . . left side."

Sergeant Loren Lewis of the Oak Island Police Department testified that on 18 July 2007, at approximately 5:45 am, he received a call to respond to a breaking and entering at Northwest 10th Street. Several other officers were already at the scene. Upon her arrival, Sergeant Lewis observed the four subjects sitting on a bench outside of the house. Sergeant Lewis noticed that "[a]ll four subjects seemed to be nervous. They were stretching and tugging at their clothing. Kind of hyper, excited." Pursuant to a protective sweep of the house, officers discovered a "plate that contained a crystal substance[.]" It was Sergeant Lewis' opinion, based on his training and experience, that the crystal substance was methamphetamine. Although all four subjects admitted that the substance was crystal methamphetamine, no one would say to whom it belonged.

According to Sergeant Lewis "some noise or something outside the residence, spooked [the four subjects]." The four subjects "huddled up . . . like someone was going to come after them. They [had] an exaggerated, startled response to the noise[.]" Officers attempted to calm the subjects down and have them sit down. When the subjects refused to sit down, they were handcuffed. After about ten minutes, when the subjects "calmed back down[,]" the handcuffs were taken off them.

Officers conducted a search of the residence pursuant to a consent to search form signed by all four subjects, including defendant. Following the search, the four subjects were placed under arrest for possession of methamphetamine and transported to the Oak Island Police Department. Previously at the residence, defendant had been advised of his Miranda rights, indicated that he understood his Miranda rights, and signed a waiver of rights form.

Sergeant Lewis testified that he left Northwest 10th Street with defendant at 8:56 a.m. and that they arrived at the police department at 9:02 a.m. Approximately an hour and 42 minutes later, defendant was transported by Sergeant Lewis to the Brunswick County Jail. Defendant was checked into the Brunswick County Jail at 11:12 a.m.

Sergeant Lewis turned defendant over to Detective Tony Burke of the Oak Island Police Department while he went to secure warrants for

the narcotics charges. Detective Burke interviewed all four subjects. Defendant was interviewed from 1:59 p.m. until 2:53 p.m.

Detective Burke testified that he advised defendant of his Miranda rights. Defendant indicated to Detective Burke that he "remembered his being advised of his Miranda Rights" and "that he was still willing to talk[.]" During this interview, defendant admitted his involvement in the robbery and murder of Cook.

On 1 June 2010, defendant was convicted by a jury of first degree murder, robbery with a dangerous weapon, and felony conspiracy to commit robbery with a dangerous weapon. Defendant was sentenced to life imprisonment without parole for the first degree murder conviction. Defendant was sentenced to 51 to 71 months for the remaining convictions. Defendant appeals.

---

On 20 May 2010, defendant filed two pre-trial motions to suppress. Defendant argues that the trial court erred by denying his second motion to suppress, in which he alleged that his statements to officers of the Oak Island Police Department were obtained in violation of section 15A-501(2) of the North Carolina General Statutes.[1]

Section 15A-501(2) of the North Carolina General Statutes provides that "upon the arrest of a person he must be taken before a judicial official without unnecessary delay." *State v. Littlejohn*, 340 N.C. 750, 757, 459 S.E.2d 629, 633 (1995).

> G.S. 15A-974(2) provides that evidence "obtained as a result" of a substantial violation of the provisions of Chapter 15A must be suppressed upon timely motion, and that the use of the term "result" in the statute indicated that *a causal relationship between a violation of the statute and the acquisition of the evidence sought to be suppressed must exist.*

*State v. Hunter*, 305 N.C. 106, 113, 286 S.E.2d 535, 539 (1982) (emphasis added).

---

1. The motion to suppress that is not the subject of this appeal requested that the trial court suppress all statements made by defendant alleged to have been taken in violation of his Fifth and Fourteenth Amendment rights under the United States Constitution and Article I, §§ 19, 23, and 24 of the North Carolina Constitution.

This Court's review of a trial court's denial of a motion to suppress in a criminal proceeding is strictly limited to a determination of whether the court's findings are supported by competent evidence, even if the evidence is conflicting, and in turn, whether those findings support the court's conclusions of law. [I]f so, the trial court's conclusions of law are binding on appeal. If there is a conflict between the state's evidence and defendant's evidence on material facts, it is the duty of the trial court to resolve the conflict and such resolution will not be disturbed on appeal. However, the trial court's conclusions of law are reviewed de novo and must be legally correct.

*State v. Scruggs*, 209 N.C. App. 725, 727, 706 S.E.2d 836, 838 (2011) (citations omitted).

Following a hearing, the trial court entered an order denying defendant's motions to suppress. Defendant does not challenge the trial court's findings of fact. Rather, defendant contends that the trial court erred in reaching conclusion of law number 7:

7. The time spent by the officers in transporting defendant from his residence to the Oak Island Police Department, in processing the four individuals arrested at defendant's residence on the drug charges, in thereafter transporting defendant to the Brunswick County Sheriff's Department for an interview, in holding defendant while the officers interviewed the three other individuals arrested at defendant's residence, and in thereafter interviewing defendant before taking him before a magistrate did not constitute such unnecessary delay as to substantially violate defendant's statutory right under NCGS 15A-501(2) to be taken before a magistrate without unnecessary delay following his arrest.

"Where a defendant fails to challenge the findings of fact in an order denying a motion to suppress, this Court's review is limited to whether the trial court's findings of fact support its conclusions of law." *State v. Little*, 203 N.C. App. 684, 687, 692 S.E.2d 451, 454 (2010) (citation and quotation marks omitted). Therefore, our review is limited to whether the findings of fact support the trial court's conclusion of law number 7.

In the instant case, the trial court's conclusion of law number 7 was supported by the following uncontested findings of fact:

11. At approximately 7:35 a.m., Sgt. Lewis asked defendant for consent to search the residence. Defendant consented and executed a written form giving the officers permission to search (State's Exhibit 1). Defendant appeared to be aware of his situation and appeared to understand the contents of State's Exhibit 1.

12. At approximately 8:10 a.m., Sgt. Lewis advised all four individuals simultaneously of their *Miranda* rights [at the residence]. Defendant . . . signed a written waiver of those rights (State's Exhibit 3), affirming that [he] understood [his] rights and [that he was] willing to talk to the officers without counsel.

. . .

17. At approximately 9:00 a.m., the officers placed all four individuals under arrest for possession of the methamphetamine and transported them to the Oak Island Police Department for processing. . . .

18. The trip from the residence to the police department took between five and ten minutes. The officers then kept defendant . . . at the police department for about an hour and forty-five minutes for processing, including photographing and fingerprinting them.

19. The officers then transported all four individuals to the Brunswick County Sheriff's Department. Based on information Det. Burke had received from an anonymous telephone caller prior to 18 July 2007, Det. Burke wanted to interview the four about the 8 July 2007 homicide of [Cook] in Oak Island.

20. The trip from the Oak Island Police Department to the Brunswick County Sheriff's Department took about 30 minutes. Upon arrival, Det. Burke and Sheriff's Det. David Crocker met with each of the four individuals separately and attempted to interview them. . . .

21 . . . . Defendant's interview lasted about one hour, beginning at 1:59 p.m. and ending at 2:53 p.m.

22. Before beginning the interview, Det. Burke reminded defendant of his Miranda rights. Defendant stated that he

STATE v. CAUDILL

[227 N.C. App. 119 (2013)]

still understood his rights and that he was willing to waive those rights and talk with the officers.

23. The officers questioned defendant extensively about the murder of [Cook]. Defendant initially denied any knowledge about the murder, but then made statements incriminating himself and the other three individuals.

. . .

28. Upon the conclusion of the interview, the officers immediately took defendant before a magistrate and obtained warrants charging him with the drug offenses and with the murder and robbery of [Cook]. The officers thereafter committed defendant to the Brunswick County jail.

Defendant argues that the delay between his arrival at the jail and his initial appearance before a magistrate to set bond on the methamphetamine charges constituted an "unnecessary delay." He contends that had bail been set in a timely manner on the methamphetamine charge, "he would have gone to work on posting bond instead of talking further with the police." Defendant also argues that the delay violated his right to due process under the fifth and fourteenth amendments of the United States Constitution and Article I, Section 19 of the North Carolina Constitution. We disagree.

Several prior cases decided by the Supreme Court reject similar challenges to a trial court's denial of a defendant's motion to suppress based on alleged violations of N.C.G.S. § 15A-501(2). *Littlejohn*, 340 N.C. 750, 459 S.E.2d 269 (A thirteen-hour delay between the time the defendant was taken into custody and the time he was taken before a magistrate did not constitute a substantial violation of Chapter 15A where officers fully advised the defendant of his constitutional rights before the interrogation began); *State v. Reynolds*, 298 N.C. 380, 259 S.E.2d 843 (1979) (The defendant was taken before a judicial official "without unnecessary delay" where questioning began at noon, the defendant confessed his guilt within 40 minutes, and he was taken to a magistrate sometime between 2:00 p.m. and 3:00 p.m. The defendant was fully informed of his rights on two occasions within those 40 minutes and he made an intelligent waiver of counsel); *State v. Chapman*, 343 N.C. 495, 471 S.E.2d 354 (1996) (There was no unnecessary delay for purposes of Chapter 15A where the defendant was arrested at 9:30 a.m. and taken to a magistrate at 8:00 p.m. where a large part of the time was spent interrogating the defendant); and *State v. Wallace*, 351 N.C.

481, 528 S.E.2d 326 (2000) (The defendant was arrested at 5:00 p.m. on 12 March 1994, met with investigators in an interview at 6:43 p.m. that same day, was advised of his *Miranda* rights at 10:00 p.m., and was questioned during the evening of 12 March and early morning of 13 March 1994. The defendant was allowed to sleep from 7:30 a.m. until 11:45 a.m. and then taken before a magistrate around noon on the 13th. The Supreme Court held that because the defendant had been advised of his constitutional rights prior to his interrogation regarding the crimes he was suspected of committing, because the number of crimes to which defendant confessed and the amount of time necessary to record the details of the crimes, along with the investigators' decision to allow the defendant to sleep, the delay in taking the defendant before a judicial official was not "unnecessary" within the meaning of Chapter 15A). We hold these cases to be controlling.

Here, defendant was advised of his constitutional rights before he was interviewed regarding the homicide of Cook. Defendant has failed to show he would not have admitted to the robbery and homicide of Cook had he been advised of the same rights again by the magistrate and therefore, we are unable to find a causal relationship between the delay and defendant's incriminating statements made during his interview. *See Hunter*, 305 N.C. at 113, 286 S.E.2d at 539. Therefore, we are unable to hold that the delay between defendant's arrest at approximately 9:00 a.m. and his appearance before a magistrate immediately after the conclusion of his interview at 2:53 p.m. amounted to unnecessary delay pursuant to N.C.G.S. § 15A-501(2) and his argument is overruled.

Defendant's argument regarding a violation of his constitutional rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 19 of the North Carolina Constitution is also without merit. Defendant relies on *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S. Ct. 1661 (1991), and *Gerstein v. Pugh*, 420 U.S. 103, 95 S. Ct. 854 (1975). "These two cases deal with the promptness required for a determination of probable cause by a neutral magistrate after a person has been arrested without a warrant." *Chapman*, 343 N.C. at 499, 471 S.E.2d at 356. As previously stated, defendant was arrested at 9:00 a.m. by officers without a warrant, and after his interview concluded at 2:53 p.m., a magistrate issued warrants charging him with the drug offenses and with the murder and robbery of Cook. We hold that "[t]his satisfies the requirement of *Riverside* and *Gerstein* that a magistrate promptly determine probable cause." *Id.* (holding that there was no constitutional violation where the defendant was arrested at 9:30 a.m. without a warrant and after his interrogation

was complete at 12:30 p.m., a magistrate issued an arrest warrant for him based on probable cause). Based on the foregoing, defendant's argument is overruled.

No error.

Judges ELMORE and ERVIN concur.