ENOCHS, Judge.
 

 *312
 
 Kap Mung ("Defendant") appeals from judgment entered upon his
 
 Alford
 
 plea to driving while impaired ("DWI"). On appeal, he contends that the trial court erred in denying his motion to suppress. Specifically, he asserts that the arresting officer failed to comply with the requirements of
 
 N.C. Gen. Stat. § 20-16.2
 
 (a) by ineffectually informing Defendant of his rights concerning a chemical analysis test. After careful review, we find no error.
 

 Factual Background
 

 From 11:00 p.m. on 28 September 2015 through 3:30 a.m. on 29 September 2015, officers with the Charlotte-Mecklenburg Police Department operated a DWI checkpoint on Idlewide Road in Charlotte, North Carolina. At approximately 1:27 a.m., Defendant, who was driving a Lexus sedan, pulled up to the checkpoint and was approached by Officer Nathan Crum ("Officer Crum").
 

 Officer Crum asked Defendant, in English, for his driver's license and registration. Defendant provided his license, but was unable to produce his registration.
 

 While Defendant was giving Officer Crum his license, Officer Crum observed that Defendant had red, bloodshot eyes. Officer Crum asked Defendant if the address on Defendant's license was correct, and Defendant answered in slurred speech that yes, it was. At this point, Officer Crum noticed a strong odor of alcohol emanating from Defendant and Defendant's car. Upon looking inside the vehicle, Officer Crum saw "a 24-ounce open container of an alcoholic beverage at [Defendant's] foot[.]"
 

 Officer Crum ordered Defendant to get out of his car and Defendant complied. He then had Defendant perform a series of field sobriety tests including a horizontal gaze nystagmus test, a walk-and-turn test, and a one leg stand test-all of which Defendant failed. Officer Crum instructed Defendant on how to perform each test in English before he attempted it. Defendant stated to Officer Crum that he understood his instructions and proceeded to try to follow them.
 

 Officer Crum next had Defendant perform two Alco-Sensor tests, each of which yielded positive results for the presence of alcohol in Defendant's system. At this point, Officer Crum placed Defendant under arrest for DWI. Defendant proceeded to plead with Officer Crum-in English-stating that "he couldn't get in trouble more, that he had already been arrested once for DWI" and that "he was here on a work visa and that he can't get in trouble again." After he was placed in the
 
 *313
 
 back of Officer Crum's patrol car, Defendant repeatedly stated-in English-that he was sorry.
 

 Officer Crum transported Defendant to the "BATmobile" for the purpose of performing a chemical analysis test on Defendant. Upon entering the BATmobile, Officer Crum read Defendant his rights under
 
 N.C. Gen. Stat. § 20-16.2
 
 (a) and provided Defendant with a written copy of these rights. Written copies of the rights were also posted on the wall of the BATmobile in both English and Spanish.
 

 Officer Crum then instructed Defendant-in English-how to perform the chemical analysis test and Defendant stated that he understood and proceeded to follow Officer Crum's directions. The results of the test indicated that Defendant had a blood alcohol concentration of 0.13. At no point from the time he was stopped at the checkpoint through his performance of the chemical analysis test did Defendant express to Officer Crum that he did not understand his instructions or request an interpreter.
 

 Defendant was charged with DWI. Defendant filed a motion to dismiss on the basis that the checkpoint was illegal; a motion to suppress based on lack of probable cause; and a motion to suppress the results of the chemical analysis test, which were heard before the Honorable Matt Josman in Mecklenburg County District Court on 21 August
 
 *286
 
 2014.
 
 [1]
 
 Judge Josman denied these motions and Defendant appealed to Superior Court for a trial
 
 de novo
 
 .
 

 On 30 November 2015, Defendant filed a motion to dismiss on the ground that the checkpoint was unconstitutional as well as a motion to dismiss for lack of probable cause for his arrest. That same day, he filed a motion to suppress the results of the chemical analysis test asserting that Officer Crum had violated
 
 N.C. Gen. Stat. § 20-16.2
 
 (a) by ineffectually informing him of his rights concerning the test due to the fact that he is originally from Burma and was not able to understand his rights or what was occurring on the ground that he did not speak English and was not provided a Burmese interpreter. On 11 December 2015, Defendant also filed a motion to dismiss on the same grounds set forth in his motion to suppress.
 

 A hearing on Defendant's motions was held before the Honorable Carla N. Archie in Mecklenburg County Superior Court on 14 and
 
 *314
 
 15 December 2015. Judge Archie denied Defendant's motions. Defendant then entered an
 
 Alford
 
 plea, reserving his right to appeal the trial court's denial of his motions.
 

 The trial court sentenced Defendant to 12 months imprisonment, suspended sentence, and placed Defendant on 18 months supervised probation. Defendant gave oral notice of appeal at the close of the hearing.
 

 Analysis
 

 Defendant's sole argument on appeal is that the trial court erred in denying his motion to suppress. Specifically, he contends that the results of the chemical analysis test should have been excluded due to the fact that Officer Crum failed to effectually inform him of his rights concerning the test pursuant to
 
 N.C. Gen. Stat. § 20-16.2
 
 (a). We disagree.
 

 This Court's review of a trial court's denial of a motion to suppress in a criminal proceeding is strictly limited to a determination of whether the court's findings are supported by competent evidence, even if the evidence is conflicting, and in turn, whether those findings support the court's conclusions of law. If so, the trial court's conclusions of law are binding on appeal. If there is a conflict between the state's evidence and defendant's evidence on material facts, it is the duty of the trial court to resolve the conflict and such resolution will not be disturbed on appeal. However, the trial court's conclusions of law are reviewed
 
 de novo
 
 and must be legally correct.
 

 State v. Scruggs
 
 ,
 
 209 N.C.App. 725
 
 , 727,
 
 706 S.E.2d 836
 
 , 838 (2011) (internal citations, quotation marks, and brackets omitted).
 

 N.C. Gen. Stat. § 20-16.2
 
 (a) (2015) provides as follows:
 

 (a)
 
 Basis for Officer to Require Chemical Analysis; Notification of Rights.
 
 -Any person who drives a vehicle on a highway or public vehicular area thereby gives consent to a chemical analysis if charged with an implied-consent offense. Any law enforcement officer who has reasonable grounds to believe that the person charged has committed the implied-consent offense may obtain a chemical analysis of the person.
 

 Before any type of chemical analysis is administered the person charged shall be taken before a chemical
 
 *315
 
 analyst authorized to administer a test of a person's breath or a law enforcement officer who is authorized to administer chemical analysis of the breath, who shall inform the person orally and also give the person a notice in writing that:
 

 (1) You have been charged with an implied-consent offense. Under the implied-consent law, you can refuse any test, but your drivers license will be revoked for one year and could be revoked for a longer period of time under certain circumstances, and an officer can compel you to be tested under other laws.
 

 (2) Repealed by Session Laws 2006-253, s. 15, effective December 1, 2006, and applicable to offenses committed on or after that date.
 

 *287
 
 (3) The test results, or the fact of your refusal, will be admissible in evidence at trial.
 

 (4) Your driving privilege will be revoked immediately for at least 30 days if you refuse any test or the test result is 0.08 or more, 0.04 or more if you were driving a commercial vehicle, or 0.01 or more if you are under the age of 21.
 

 (5) After you are released, you may seek your own test in addition to this test.
 

 (6) You may call an attorney for advice and select a witness to view the testing procedures remaining after the witness arrives, but the testing may not be delayed for these purposes longer than 30 minutes from the time you are notified of these rights. You must take the test at the end of 30 minutes even if you have not contacted an attorney or your witness has not arrived.
 

 Defendant is correct as a general proposition that "[w]here [a] defendant is not advised of [his] rights [under
 
 N.C. Gen. Stat. § 20-16.2
 
 (a) ], the State's [chemical analysis] test is inadmissible in evidence."
 
 State v. Gilbert
 
 ,
 
 85 N.C.App. 594
 
 , 597,
 
 355 S.E.2d 261
 
 , 263 (1987). Here, Defendant asserts that he was not adequately informed of his rights under
 
 N.C. Gen. Stat. § 20-16.2
 
 (a) due to the fact that English is not his first language and that, consequently, the failure of Officer Crum to
 
 *316
 
 ensure that these rights were communicated to him in his native language of Burmese resulted in a violation of the statute.
 

 Both Defendant and the State direct us to this Court's opinion in
 
 State v. Martinez
 
 , --- N.C. App. ----,
 
 781 S.E.2d 346
 
 (2016), as the controlling authority concerning whether a non-English speaking defendant's rights under
 
 N.C. Gen. Stat. § 20-16.2
 
 (a) have been sufficiently disclosed to him so that the results of a chemical analysis test are properly admissible into evidence and not subject to suppression. In
 
 Martinez
 
 , the defendant's vehicle was pulled over by a police officer when he attempted to evade a DWI checkpoint.
 

 Id.
 

 at ----,
 
 781 S.E.2d at 347
 
 . The officer ordered the defendant out of his vehicle and began conducting field sobriety tests. During the performance of these tests, it became apparent to the officer that the defendant did not fully understand English, and that his first language was Spanish.
 

 Id.
 

 at ----,
 
 781 S.E.2d at 347
 
 .
 

 The officer ultimately arrested the defendant for driving while impaired and transported him to the Wake County Jail in order to conduct a chemical analysis of his breath.
 

 Id.
 

 at ----,
 
 781 S.E.2d at 347
 
 . Prior to the test, the officer read the defendant his implied consent rights in English and gave him a Spanish language version of those same rights in written form. The officer called his dispatcher, who spoke Spanish, and placed him on speaker phone to answer any questions the defendant may have had regarding the test. Thereafter, the defendant signed the Spanish language version of the implied consent rights form and submitted to testing.
 

 Id.
 

 at ----,
 
 781 S.E.2d at 347
 
 . The defendant was ultimately found guilty of driving while impaired.
 

 Id.
 

 at ----,
 
 781 S.E.2d at 347
 
 .
 

 On appeal to this Court, the defendant argued that
 
 N.C. Gen. Stat. § 20-16.2
 
 (a) "requires that a motorist be informed orally of his or her implied consent rights in a language he or she fully understands before being subjected to [chemical analysis] testing. According to Defendant, because he is not a native English speaker, and he was only orally informed of his implied consent rights in English before being subjected to breath alcohol testing, the results were inadmissible."
 

 Id.
 

 at ----,
 
 781 S.E.2d at 348
 
 .
 

 We expressly disagreed with the defendant's position, holding as follows:
 

 Our Supreme Court has held that the purpose of this statute is to promote cooperation between law enforcement and the driving public in the collection of scientific evidence, thereby ensuring public safety while safeguarding
 
 *317
 
 against the risk of erroneous driving privilege deprivation.
 
 Seders v. Powell
 
 ,
 
 298 N.C. 453
 
 , 464-65,
 
 259 S.E.2d 544
 
 , 552 (1979). The statute provides that a law enforcement officer or chemical analyst who administers a breath alcohol test based on a suspected commission of an implied consent offense "shall" inform the motorist suspected of the offense "orally and also ... in writing" about his or her
 
 *288
 
 rights and the consequences of refusing to submit to testing.
 
 N.C. Gen. Stat. § 20-16.2
 
 (a). However, the statute also provides that a person who is unconscious or is otherwise unable to refuse testing may nevertheless be subject to testing and that the requirements related to informing the motorist of his or her rights and the consequences of refusal are inapplicable.
 

 Id.
 

 § 20-16.2(b). Thus, neither the plain language nor the statutory purpose of § 20-16.2 disclose a legislative intent by our General Assembly to condition
 
 the admissibility
 
 of chemical analysis test results on a defendant's subjective understanding of the information officers and chemical analysts are required to disclose before conducting the testing.
 

 Id.
 

 at ----,
 
 781 S.E.2d at 348
 
 . This Court then went on to further unambiguously hold that "[i]n its enactment of the requirements of subsection (a) of
 
 N.C. Gen. Stat. § 20-16.2
 
 , we believe that the General Assembly intended to require the disclosure of the information set out in that subsection, but not to condition the admissibility of the results of chemical analysis on the defendant's understanding of the information thus disclosed. Therefore, we hold that the trial court did not err in allowing the test results to be admitted into evidence over Defendant's objection."
 

 Id.
 

 at ----,
 
 781 S.E.2d at 348
 
 . (internal citation omitted).
 

 We believe that
 
 Martinez'
 
 holding is straightforward and expressly clear: The admissibility of the results of a chemical analysis test are not conditioned on a defendant's subjective understanding of the information disclosed to him pursuant to the requirements of
 
 N.C. Gen. Stat. § 20-16.2
 
 (a). Therefore, as long as the rights delineated under
 
 N.C. Gen. Stat. § 20-16.2
 
 (a) are disclosed to a defendant-which occurred in the present case-the requirements of the statute are satisfied and it is immaterial whether the defendant comprehends them.
 

 Consequently, we reaffirm our holding in
 
 Martinez
 
 and find that in the present case Officer Crum fully complied with
 
 N.C. Gen. Stat. § 20-16.2
 
 (a) when he read Defendant his rights as to the chemical
 
 *318
 
 analysis test in English and provided him written form copies of those rights. As a result, we hold that the trial court did not err in denying Defendant's motion to suppress.
 

 Conclusion
 

 For the reasons stated above, the trial court properly denied Defendant's motion to suppress.
 

 NO ERROR.
 

 Chief Judge McGEE and Judge BRYANT concur.
 

 [1]
 

 These motions are not included in the record on appeal, but were ruled upon by the district court as evidenced by its 21 August 2014 order denying them.