IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-470

 Filed: 20 December 2016

Mecklenburg County, No. 13 CRS 239266

STATE OF NORTH CAROLINA

 v.

KAP MUNG, Defendant.

 Appeal by defendant from judgment entered 15 December 2015 by Judge Carla

N. Archie in Mecklenburg County Superior Court. Heard in the Court of Appeals 28

November 2016.

 Attorney General Roy Cooper, by Associate Attorney General J. Rick Brown, for
 the State.

 Winifred H. Dillon for defendant-appellant.

 ENOCHS, Judge.

 Kap Mung (“Defendant”) appeals from judgment entered upon his Alford plea

to driving while impaired (“DWI”). On appeal, he contends that the trial court erred

in denying his motion to suppress. Specifically, he asserts that the arresting officer

failed to comply with the requirements of N.C. Gen. Stat. § 20-16.2(a) by ineffectually

informing Defendant of his rights concerning a chemical analysis test. After careful

review, we find no error.

 Factual Background
 STATE V. MUNG

 Opinion of the Court

 From 11:00 p.m. on 28 September 2015 through 3:30 a.m. on 29 September

2015, officers with the Charlotte-Mecklenburg Police Department operated a DWI

checkpoint on Idlewide Road in Charlotte, North Carolina. At approximately 1:27

a.m., Defendant, who was driving a Lexus sedan, pulled up to the checkpoint and was

approached by Officer Nathan Crum (“Officer Crum”).

 Officer Crum asked Defendant, in English, for his driver’s license and

registration. Defendant provided his license, but was unable to produce his

registration.

 While Defendant was giving Officer Crum his license, Officer Crum observed

that Defendant had red, bloodshot eyes. Officer Crum asked Defendant if the address

on Defendant’s license was correct, and Defendant answered in slurred speech that

yes, it was. At this point, Officer Crum noticed a strong odor of alcohol emanating

from Defendant and Defendant’s car. Upon looking inside the vehicle, Officer Crum

saw “a 24-ounce open container of an alcoholic beverage at [Defendant’s] foot[.]”

 Officer Crum ordered Defendant to get out of his car and Defendant complied.

He then had Defendant perform a series of field sobriety tests including a horizontal

gaze nystagmus test, a walk-and-turn test, and a one leg stand test — all of which

Defendant failed. Officer Crum instructed Defendant on how to perform each test in

English before he attempted it. Defendant stated to Officer Crum that he understood

his instructions and proceeded to try to follow them.

 -2-
 STATE V. MUNG

 Opinion of the Court

 Officer Crum next had Defendant perform two Alco-Sensor tests, each of which

yielded positive results for the presence of alcohol in Defendant’s system. At this

point, Officer Crum placed Defendant under arrest for DWI. Defendant proceeded to

plead with Officer Crum — in English — stating that “he couldn’t get in trouble more,

that he had already been arrested once for DWI” and that “he was here on a work

visa and that he can’t get in trouble again.” After he was placed in the back of Officer

Crum’s patrol car, Defendant repeatedly stated — in English — that he was sorry.

 Officer Crum transported Defendant to the “BATmobile” for the purpose of

performing a chemical analysis test on Defendant. Upon entering the BATmobile,

Officer Crum read Defendant his rights under N.C. Gen. Stat. § 20-16.2(a) and

provided Defendant with a written copy of these rights. Written copies of the rights

were also posted on the wall of the BATmobile in both English and Spanish.

 Officer Crum then instructed Defendant — in English — how to perform the

chemical analysis test and Defendant stated that he understood and proceeded to

follow Officer Crum’s directions. The results of the test indicated that Defendant had

a blood alcohol concentration of 0.13. At no point from the time he was stopped at

the checkpoint through his performance of the chemical analysis test did Defendant

express to Officer Crum that he did not understand his instructions or request an

interpreter.

 -3-
 STATE V. MUNG

 Opinion of the Court

 Defendant was charged with DWI. Defendant filed a motion to dismiss on the

basis that the checkpoint was illegal; a motion to suppress based on lack of probable

cause; and a motion to suppress the results of the chemical analysis test, which were

heard before the Honorable Matt Josman in Mecklenburg County District Court on

21 August 2014.1 Judge Josman denied these motions and Defendant appealed to

Superior Court for a trial de novo.

 On 30 November 2015, Defendant filed a motion to dismiss on the ground that

the checkpoint was unconstitutional as well as a motion to dismiss for lack of probable

cause for his arrest. That same day, he filed a motion to suppress the results of the

chemical analysis test asserting that Officer Crum had violated N.C. Gen. Stat. § 20-

16.2(a) by ineffectually informing him of his rights concerning the test due to the fact

that he is originally from Burma and was not able to understand his rights or what

was occurring on the ground that he did not speak English and was not provided a

Burmese interpreter. On 11 December 2015, Defendant also filed a motion to dismiss

on the same grounds set forth in his motion to suppress.

 A hearing on Defendant’s motions was held before the Honorable Carla N.

Archie in Mecklenburg County Superior Court on 14 and 15 December 2015. Judge

Archie denied Defendant’s motions. Defendant then entered an Alford plea,

reserving his right to appeal the trial court’s denial of his motions.

 1 These motions are not included in the record on appeal, but were ruled upon by the district
court as evidenced by its 21 August 2014 order denying them.

 -4-
 STATE V. MUNG

 Opinion of the Court

 The trial court sentenced Defendant to 12 months imprisonment, suspended

sentence, and placed Defendant on 18 months supervised probation. Defendant gave

oral notice of appeal at the close of the hearing.

 Analysis

 Defendant’s sole argument on appeal is that the trial court erred in denying

his motion to suppress. Specifically, he contends that the results of the chemical

analysis test should have been excluded due to the fact that Officer Crum failed to

effectually inform him of his rights concerning the test pursuant to N.C. Gen. Stat. §

20-16.2(a). We disagree.

 This Court’s review of a trial court’s denial of a
 motion to suppress in a criminal proceeding is strictly
 limited to a determination of whether the court’s findings
 are supported by competent evidence, even if the evidence
 is conflicting, and in turn, whether those findings support
 the court’s conclusions of law. If so, the trial court’s
 conclusions of law are binding on appeal. If there is a
 conflict between the state’s evidence and defendant’s
 evidence on material facts, it is the duty of the trial court
 to resolve the conflict and such resolution will not be
 disturbed on appeal. However, the trial court’s conclusions
 of law are reviewed de novo and must be legally correct.

State v. Scruggs, 209 N.C. App. 725, 727, 706 S.E.2d 836, 838 (2011) (internal

citations, quotation marks, and brackets omitted).

 N.C. Gen. Stat. § 20-16.2(a) (2015) provides as follows:

 (a) Basis for Officer to Require Chemical
 Analysis; Notification of Rights. — Any person who
 drives a vehicle on a highway or public vehicular area

 -5-
 STATE V. MUNG

 Opinion of the Court

thereby gives consent to a chemical analysis if charged
with an implied-consent offense. Any law enforcement
officer who has reasonable grounds to believe that the
person charged has committed the implied-consent offense
may obtain a chemical analysis of the person.

 Before any type of chemical analysis is administered
the person charged shall be taken before a chemical analyst
authorized to administer a test of a person’s breath or a law
enforcement officer who is authorized to administer
chemical analysis of the breath, who shall inform the
person orally and also give the person a notice in writing
that:

 (1) You have been charged with an implied-consent
 offense. Under the implied-consent law, you can
 refuse any test, but your drivers license will be
 revoked for one year and could be revoked for a
 longer period of time under certain circumstances,
 and an officer can compel you to be tested under
 other laws.

 (2) Repealed by Session Laws 2006-253, s. 15,
 effective December 1, 2006, and applicable to
 offenses committed on or after that date.

 (3) The test results, or the fact of your refusal, will
 be admissible in evidence at trial.

 (4) Your driving privilege will be revoked
 immediately for at least 30 days if you refuse any
 test or the test result is 0.08 or more, 0.04 or more if
 you were driving a commercial vehicle, or 0.01 or
 more if you are under the age of 21.

 (5) After you are released, you may seek your own
 test in addition to this test.

 (6) You may call an attorney for advice and select a
 witness to view the testing procedures remaining

 -6-
 STATE V. MUNG

 Opinion of the Court

 after the witness arrives, but the testing may not be
 delayed for these purposes longer than 30 minutes
 from the time you are notified of these rights. You
 must take the test at the end of 30 minutes even if
 you have not contacted an attorney or your witness
 has not arrived.

 Defendant is correct as a general proposition that “[w]here [a] defendant is not

advised of [his] rights [under N.C. Gen. Stat. § 20-16.2(a)], the State’s [chemical

analysis] test is inadmissible in evidence.” State v. Gilbert, 85 N.C. App. 594, 597,

355 S.E.2d 261, 263 (1987). Here, Defendant asserts that he was not adequately

informed of his rights under N.C. Gen. Stat. § 20-16.2(a) due to the fact that English

is not his first language and that, consequently, the failure of Officer Crum to ensure

that these rights were communicated to him in his native language of Burmese

resulted in a violation of the statute.

 Both Defendant and the State direct us to this Court’s opinion in State v.

Martinez, __ N.C. App. __, 781 S.E.2d 346 (2016), as the controlling authority

concerning whether a non-English speaking defendant’s rights under N.C. Gen. Stat.

§ 20-16.2(a) have been sufficiently disclosed to him so that the results of a chemical

analysis test are properly admissible into evidence and not subject to suppression. In

Martinez, the defendant’s vehicle was pulled over by a police officer when he

attempted to evade a DWI checkpoint. Id. at __, 781 S.E.2d at 347. The officer

ordered the defendant out of his vehicle and began conducting field sobriety tests.

During the performance of these tests, it became apparent to the officer that the

 -7-
 STATE V. MUNG

 Opinion of the Court

defendant did not fully understand English, and that his first language was Spanish.

Id. at __, 781 S.E.2d at 347.

 The officer ultimately arrested the defendant for driving while impaired and

transported him to the Wake County Jail in order to conduct a chemical analysis of

his breath. Id. at __, 781 S.E.2d at 347. Prior to the test, the officer read the

defendant his implied consent rights in English and gave him a Spanish language

version of those same rights in written form. The officer called his dispatcher, who

spoke Spanish, and placed him on speaker phone to answer any questions the

defendant may have had regarding the test. Thereafter, the defendant signed the

Spanish language version of the implied consent rights form and submitted to testing.

Id. at __, 781 S.E.2d at 347. The defendant was ultimately found guilty of driving

while impaired. Id. at __, 781 S.E.2d at 347.

 On appeal to this Court, the defendant argued that N.C. Gen. Stat. § 20-16.2(a)

“requires that a motorist be informed orally of his or her implied consent rights in a

language he or she fully understands before being subjected to [chemical analysis]

testing. According to Defendant, because he is not a native English speaker, and he

was only orally informed of his implied consent rights in English before being

subjected to breath alcohol testing, the results were inadmissible.” Id. at __, 781

S.E.2d at 348.

 We expressly disagreed with the defendant’s position, holding as follows:

 -8-
 STATE V. MUNG

 Opinion of the Court

 Our Supreme Court has held that the purpose of this
 statute is to promote cooperation between law enforcement
 and the driving public in the collection of scientific
 evidence, thereby ensuring public safety while
 safeguarding against the risk of erroneous driving
 privilege deprivation. Seders v. Powell, 298 N.C. 453, 464-
 65, 259 S.E.2d 544, 552 (1979). The statute provides that
 a law enforcement officer or chemical analyst who
 administers a breath alcohol test based on a suspected
 commission of an implied consent offense “shall” inform the
 motorist suspected of the offense “orally and also . . . in
 writing” about his or her rights and the consequences of
 refusing to submit to testing. N.C. Gen. Stat. § 20-16.2(a).
 However, the statute also provides that a person who is
 unconscious or is otherwise unable to refuse testing may
 nevertheless be subject to testing and that the
 requirements related to informing the motorist of his or her
 rights and the consequences of refusal are inapplicable. Id.
 § 20-16.2(b). Thus, neither the plain language nor the
 statutory purpose of § 20-16.2 disclose a legislative intent
 by our General Assembly to condition the admissibility of
 chemical analysis test results on a defendant’s subjective
 understanding of the information officers and chemical
 analysts are required to disclose before conducting the
 testing.

Id. at __, 781 S.E.2d at 348. This Court then went on to further unambiguously hold

that “[i]n its enactment of the requirements of subsection (a) of N.C. Gen. Stat. § 20-

16.2, we believe that the General Assembly intended to require the disclosure of the

information set out in that subsection, but not to condition the admissibility of the

results of chemical analysis on the defendant’s understanding of the information thus

disclosed. Therefore, we hold that the trial court did not err in allowing the test

 -9-
 STATE V. MUNG

 Opinion of the Court

results to be admitted into evidence over Defendant’s objection.” Id. at __, 781 S.E.2d

at 348. (internal citation omitted).

 We believe that Martinez’ holding is straightforward and expressly clear: The

admissibility of the results of a chemical analysis test are not conditioned on a

defendant’s subjective understanding of the information disclosed to him pursuant to

the requirements of N.C. Gen. Stat. § 20-16.2(a). Therefore, as long as the rights

delineated under N.C. Gen. Stat. § 20-16.2(a) are disclosed to a defendant — which

occurred in the present case — the requirements of the statute are satisfied and it is

immaterial whether the defendant comprehends them.

 Consequently, we reaffirm our holding in Martinez and find that in the present

case Officer Crum fully complied with N.C. Gen. Stat. § 20-16.2(a) when he read

Defendant his rights as to the chemical analysis test in English and provided him

written form copies of those rights. As a result, we hold that the trial court did not

err in denying Defendant’s motion to suppress.

 Conclusion

 For the reasons stated above, the trial court properly denied Defendant’s

motion to suppress.

 NO ERROR.

 Chief Judge McGEE and Judge BRYANT concur.

 - 10 -